(134 So. 905)

GEO. D. GEDDES UNDERTAKING & EMBALMING CO., Limited, v. HOME ACC. INS. CO.

No. 30893.

April 27, 1931.

Rehearing Denied May 25, 1931.

Denegre, Leovy & Chaffe and Alvin R. Christovich, all of New Orleans, for appellant.

Normann, McMahon & Breckwoldt, of New Orleans, for appellee.

LAND, J.

Plaintiff company is engaged in the undertaking business, and, in connection with that business, owned and operated on December 3, 1927, a fleet of 13 automobiles, including 3 Cadillac sedans.

On that date, a Cadillac sedan, while driven in a funeral procession conducted by plaintiff, ran off the New Basin Shell road, and plunged into the New Basin canal, resulting in the death of six passengers and injury to one passenger.

Upon instructions of defendant's representative, and prior to denial of liability by defendant, plaintiff settled with the heirs of the six persons deceased for the sum of $6,244.50, and with the injured passenger for the sum of $192.75, or a total of $6,437.25.

Defendant thereafter refused to reimburse plaintiff for the loss, on the ground that the Cadillac sedan involved in the accident was serial No. 59–U–687, and was not covered by the policy, which does include, however, Cadillac sedan serial No. V–57–132.

Plaintiff alleges that Cadillac sedan V–57–132 was inserted in the policy through error, mistake, or fraud, and that Cadillac sedan 59–U–687 should have been inserted, as it was the automobile actually insured, and intended to be insured by plaintiff and defendant.

Plaintiff prays that the policy be reformed accordingly, and for judgment in its favor against defendant in the sum of $6,437.25, with attorney's fees in the further sum of $1,500, or a total of $7,937.25, with legal interest from date of judicial demand.

1. The three policies issued to plaintiff by defendant cover a total of 13 cars, or the entire fleet of cars owned by plaintiff on the dates of the policies, as well as on the date of the accident.

Each of these policies contains a Cadillac sedan, upon which plaintiff paid a premium of $55.

It is clear, therefore, that it was the intention of both plaintiff and defendant to insure plaintiff's entire fleet of cars.

The numbers of two of the sedans are admittedly correct. That neither plaintiff nor defendant intended to insure Cadillac sedan V–57–132 is made patent by the fact that, although this car had once been insured with the defendant, it had been completely dismantled and demolished and went out of existence in 1926. It is evident therefore in the year 1927, when these policies issued, that this number was inserted in the policy through some error of the plaintiff or the defendant, or through the error of both.

It was a part of defendant's service to its policy holders to secure all necessary data, information, etc., such as "make of car," "body style," "year model," "number of cylinders," "serial number of automobile," "factory num-

ber of motor," and "only purpose for which automobiles are to be used."

Manifestly, defendant did not perform its duty to plaintiff in this respect, and plaintiff, relying upon the service promised by defendant, did not examine the policies and check over the serial numbers of the sedans therein included. Hence the misdescription of the sedan arose from mutual mistake.

In Brodie v. Atlas Assur. Co., 158 La. 699, 104 So. 620, 622, it was said: "It is well settled that, when a policy of insurance as issued does not conform to the contract which it purports to evidence, and the insured accepts the policy in the belief that it does conform to his contract, a court of equity will reform the instrument. Am. & Eng. Ency. of Law, vol. 16, p. 869.

"And a court of equity on a proper case shown will reform a written contract of insurance on the ground of accident, fraud, or mistake. Such mistake, among others, may be one in reference to the amount of insurance, the term and duration of the risk, the property or interest covered by the policy," etc., citing Corpus Juris, vol. 26, p. 104.

In the same case at page 700 of 158 La., 104 So. 620, 622, it was also said: "In order, however, to justify the reformation of an insurance contract there must have been either mutual mistake or mistake on one side and fraud on the other."

■ It is also well settled that "a suit for a reformation may be, and usually is, maintained after a loss which would fall within the policy as reformed." 14 Ruling Case Law, 903; 2 Cooley's Briefs on Insurance (2d Ed.) 1419; Graves v. Boston Marine Ins. Co., 2 Cranch, 419, 2 L. Ed. 324; Equitable Safety Ins. Co. v. Hearne, 20 Wall. 494, 22 L. Ed. 398.

Judgment was rendered in the court below in favor of plaintiff reforming the contract of insurance so as to evidence the true intent of the parties by correcting the erroneous serial number and initial, V–57–132, to read 59–U–687, and plaintiff was permitted to recover under the policy, as thus reformed, the amount sued for, with legal interest from date of judicial demand until paid.

In our opinion, the judgment appealed from is justified by the law and the facts of the case.

Judgment affirmed.