## SINGLETON v. FIRST NAT. LIFE INS. CO.
### No. 16067.

Court of Appeal of Louisiana. Orleans.
April 15, 1935.

See, also (La. App.) 157 So. 620.

Normann & McMahon and Harold M. Rouchell, all of New Orleans, for appellant.

Chas. J. Mundy, of New Orleans, for appellee.

JANVIER, Judge.

Amelia Singleton, beneficiary in a policy of life insurance issued by defendant, First National Life Insurance Company, brings this suit, claiming $129 as the proceeds of the policy. Defendant contends that the amount due under the policy has been paid.

At the time of the death of plaintiff's husband there were in existence two policies on his life, both issued by defendant company. Plaintiff called at the office of defendant with the other policy for $77, made claim thereunder, and also stated that she had another policy on her husband's life, which had been lost or mislaid. She was told that the records of the company showed another policy in the sum of $120, and check was issued to her which she used, the check being for the sum of $197, the amount being the sum of the face values of the two policies, according to the records of the company. Later, having discovered the policy itself, she presented it to her attorney and authorized him to file this suit. The policy apparently provided for payment of the sum of $129 in the event of the death of the insured. When defendant company discovered that the policy was for the sum of $129, instead of $120, as its records showed, in a supplemental answer it alleged that the figures "129" had been written in the policy in error, that the policy should have been for only $120, the amount of insurance which had been applied for by the insured, and it prayed that the policy be reformed in accordance with the intention of the parties at the time the application was made by the insured.

In the court, a qua, there was judgment for plaintiff for $9, the difference between the amount shown on the policy and the amount shown to have been paid to plaintiff.

The law, with reference to the right to reform a contract of this kind, is well settled. In Couch on Insurance, § 1391, page 4982, is found the following:

"Although the policy is presumed to contain the actual. agreement of the parties and to express the contract in such words as they have mutually chosen, if, either through fraud of one and mistake of the other, or mutual mistake, or because of the inadvertence, accident, mistake or fraud of the scrivener in reducing the contract to writing, it does not embody therein the actual contract intended, or fully set forth the same, equity has jurisdiction to reform it; and this even though the statutes require that the whole agreement between the parties shall be expressed in the policy * * *.

" * * * Although mutuality of mistake is not necessary, where the mistake is due to a clerical error of the scrivener, in which event relief may be had at the suit of either party, even though he was the agent of the insurer. * * * *"

In the same work, at page 5007, the author states that: "A policy of life insurance or a benefit certificate may be reformed, when, as the result of a mistake, the amount stated therein is erroneous."

■ That a policy which contains a mistake may be reformed so as to properly express the intention of the parties has been definitely settled in this state. In Brodie v. Atlas Assurance Corporation, 158 La. 695, 104 So. 620, 622, the Supreme Court said: "And a court of equity on a proper case shown will reform a written contract of insurance on the ground of accident, fraud, or mistake. Such mistake, among others, may be one in reference to the amount of insurance, the term and duration of the risk, the property or interest covered by the policy. * * *"

As authority for this view, the court cited Corpus Juris, vol. 26, page 104. The court also said: "It is well settled that, when a policy of insurance as issued does not conform to the contract which it purports to evidence, and the insured accepts the policy in the belief that it does conform to his contract, a court of equity will reform the instrument. * * *"

In Gaudet v. North River Ins. Co., 156 La. 719, 101 So. 118, the Supreme Court said: "An insurance policy, which is not in accord with the contract which it purports to evidence, will be reformed by equity so as to conform to parties' intention."

The views expressed in the Brodie Case were reiterated and affirmed by the Supreme Court in Geo. D. Geddes Undertaking & Embalming Co. v. Home Accident Insurance Company, 172 La. 598, 134 So. 905. Similar views were expressed in the following cases: Pope-Gammill Lumber Co. v. Zurich Gen. Accident & Liability Ins. Co., 168 La. 422, 122 So. 278; Davega & Co. v. Crescent Ins. Co., 7 La. Ann. 228; Crowell v. New Hampshire Fire Ins. Co. (La. App.) 147 So. 762; Topps v. North British & Mercantile Ins. Co. (La. App.) 148 So. 470.

The facts show conclusively that the amount of insurance the parties intended should be issued was $120. The application signed by the insured contains the figures "$120.00." It is shown that the premium paid was the correct premium for a policy in the sum of $120, and that an additional premium would have been required to support a policy of $129. .

■■ Counsel for plaintiff contends that the suit to reform the policy should have been filed sooner. He argues that since 6½ years elapsed between the time of the issuance of the policy and the time at which the prayer for reformation was filed, defendant should be held to be estopped by laches to make the contention that the policy was issued for an erroneous amount. But he overlooks the fact that during that time, or during practically all that time, the defendant had no knowledge that the policy had been issued for an incorrect amount. The policy was in possession of the insured, and the company had no knowledge of the error until the suit was filed. It is true that it might have discovered it immediately upon the filing of the suit by an examination of the policy itself, but, as soon as it had a reasonable opportunity to inspect the policy and it did discover the error, it then immediately filed the supplemental answer seeking reformation.

It is very evident that the prayer of the defendant for a reformation of the policy should have been granted, and, had it been granted, the only judgment which could have been rendered would have been one dismissing plaintiff's suit.

Counsel calls attention to the fact that the costs in this case have been considerable, and he asserts that a portion of these costs. have resulted, from the fact that, when he called upon defendant company for payment of the policy in the sum of $129, defendant's officials did not advise him that the policy had been paid, or that the policy which they had paid was in the sum of $120. The evidence leads to the conclusion that there were at least two conversations between counsel for plaintiff and officials of defendant company, and that in these conversations counsel for plaintiff was given sufficient information to show that the policy in question had

been paid. We therefore see no reason to relieve plaintiff of the payment of any portion of the costs, which the decree which we have decided to render will assess against her.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is annulled, avoided, and reversed, and that there now be judgment in favor of defendant dismissing plaintiff's suit at her cost.

Reversed.

LECHE, J., absent, takes no part.