347 So.2d 63 (1977)
MFA LIFE INSURANCE COMPANY, Plaintiff-Appellee,
v.
Mary Hislop HUEY and Trustees of Barksdale Federal Credit Union, Defendants-Appellants (Trustees).
No. 13253.
Court of Appeal of Louisiana, Second Circuit.
May 23, 1977.
*64 Skeels, Baker & Coleman by Donald L. Baker, Shreveport, for Barksdale Federal Credit Union and Trustees, defendant-appellant.
Herold & Geneux by T. Lynn Geneux, Shreveport, for defendant-appellee.
Cook, Clark, Egan, Yancey & King by Sidney B. Galloway, Shreveport, for plaintiff-appellee.
Before PRICE, HALL and JONES, JJ.
JONES, Judge.
The trustees of the Barksdale Federal Credit Union Pension Trust appeal a trial court judgment holding Mary Hislop Huey to be entitled to the proceeds of an annuity policy. We affirm.
The Barksdale Federal Credit Union, "desiring to encourage the loyalty, continuity of service, and financial security after retirement of its permanent employees. . .", established a pension plan on August 28, 1973, to provide retirement benefits for its employees. The retirement benefits were to be funded by an annuity policy on the life of the employee, with the premiums paid solely by Barksdale Federal Credit Union. Upon approval by the Internal Revenue Service the plan was to take effect, applying retroactively to October 1, 1973. The annuity policies were obtained from MFA Life Insurance Company (MFA) through William A. Baldwin, who was a member of the Board of Directors of the Barksdale Federal Credit Union, as well as an agent for MFA. Baldwin obtained individual applications from the qualified employees of the credit union and delivered these applications and a copy of the trust agreement to the MFA home office.
Lynn Edmond Huey, husband of Mary Hislop Huey, was the loan manager and a ten year employee of the credit union. He became a participant in the pension plan at its inception, naming his wife as beneficiary. Lynn Huey died on October 7, 1974, a little more than one year after joining the plan.
Upon Lynn Huey's death, the proceeds of the annuity policy ($9,158.00) became payable. Under the express terms of the policy Mary Huey, as the named beneficiary, was entitled to these proceeds. However, because of an adverse claim by the Barksdale Federal Credit Union Pension Trust (Barksdale), MFA provoked a concursus proceeding, naming as defendants Mary Huey and the trustees of the pension plan. The proceeds of the policy were then deposited into the registry of the court. After trial, the lower court rejected Barksdale's plea for reformation of the annuity policy because of mutual error and held Mary Huey was entitled to the proceeds.
On appeal Barksdale asserts the trial court erred in its factual conclusion that there was no showing of mutual error as regards the terms of the annuity policy, and in failing to reform the annuity policy to reflect the intent of the parties to the policy by incorporating the vesting provisions of the pension plan.
A copy of the annuity policy, Lynn Huey's application form, and a copy of the pension plan are in the record. The application provides, inter alia, that Lynn Edmond Huey is the annuitant, Mary Hislop Huey is the primary beneficiary, and Barksdale Federal Credit Union Employee Pension Trust is the owner of the policy.
As regards the death of the annuitant, the policy provides:
"In the event the death of the Annuitant occurs prior to the Retirement Date, the Company will pay to the Beneficiary a *65 death benefit which is equal to the larger of the premiums paid . . . or the Net Cash Value. . . ."
As regards a participant's death prior to retirement, the pension plan provides:
"Distribution Upon Death:
"In the event of the death of a Participant before retirement the Trustee shall cause the Insurer to pay to the designated Beneficiary the amount of the vested interest of the deceased Participant in the same manner as hereinafter provided in the case of termination of employment.
* * * * * *
"A Participant shall designate on a form satisfactory to the Trustee a Beneficiary of any death proceeds or benefits which may become payable under Policies held with the respect to such Participant. . ."
The vesting provision referred to above provides:
"Any policies held for the account of the Participant shall be forfeited by such Participant except as provided herein. Prior to the completion of 5 years of participation no interest shall be vested. Upon the completion of 5 years of participation, 25% shall vest, and an additional 5% shall vest upon the completion of each year of participation thereafter, until the complete interest of the Participant in the guaranteed cash value only of annuity on participant's life."
Other than naming Barksdale as the owner of the policy, no reference is made to the pension plan in the annuity contract.
Barksdale asserts the provisions of the pension plan clearly show the intent of the parties is that the beneficiary is not entitled to any proceeds from the annuity policy unless the employee had some vested interest in the pension plan, and since Lynn Huey had no vested interest, the judgment awarding Mary Huey the proceeds of the annuity policy was clearly erroneous. Barksdale asks the annuity policy be reformed so as to incorporate the vesting schedule in the provision of the annuity policy allowing the beneficiary to recover the death benefits.
Under the provisions of LSA-R.S. 22:628,[1] the terms of the pension plan cannot modify the provisions of the annuity policy unless it was made a part of the policy. However, the jurisprudence has allowed reformation of an insurance policy when, because of mutual error or mistake, the policy fails to reflect the intent of the parties. Herbert v. Breaux, 285 So.2d 829 (La.App. 1st Cir. 1973); Gaudet v. North River Insurance Company, 156 La. 719, 101 So. 118 (1924); Singleton v. First National Life Insurance Company, 160 So. 437 (Orl. La.App.1935). After a careful reading of this record, we find Barksdale has not shown there was mutual error.
Barksdale claims since Baldwin was familiar with the terms of the pension plan, and was an agent for MFA, then MFA was considered as having knowledge of the terms of the pension plan. Even assuming this is true, there is no evidence from which it can be concluded that MFA understood it should have incorporated the terms of the pension plan into its annuity policy. The evidence is clear the annuity policy reflects the information contained on the application form signed by Lynn Huey and Barksdale, and presented to MFA by Barksdale. We can only conclude there was no error on the part of MFA.
Additionally, we cannot agree with Barksdale's contention that Lynn Huey is not a party to the annuity policy and therefore error need not be shown on his part before the policy can be reformed.
*66 In a situation such as this, the provisions of LSA-R.S. 22:613[2] and 22:616[3]require that Lynn Huey be a party to the policy. Barksdale has not shown Lynn Huey intended or would have agreed that Barksdale, rather than his wife, should receive the death benefits of the annuity policy on his life if he should die prior to the vesting of his interest in the pension plan. Barksdale's reliance on a self-serving provision of the pension plan, which provides a participant conclusively assents to all provisions of the pension plan, is of no avail because Barksdale has not shown Huey knew of and agreed to this provision.
For the foregoing reasons, the judgment of the lower court is affirmed, appellant to pay all costs below and on appeal.
Affirmed.
NOTES
[1] "§ 628. Must contain entire contract

"No agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be valid unless in writing and made a part of the policy. This Section shall not apply to the contracts as provided in Part XV of this Chapter."
[2] "§ 613. Insurable interest required; personal insurances

"A. Any individual of competent legal capacity may procure or effect an insurance contract upon his own life or body for the benefit of any person. But no person shall procure or cause to be procured any insurance contract upon the life or body of another individual unless the benefits under such contract are payable to the individual insured or his personal representatives, or to a person having, at the time when such contract was made, an insurable interest in the individual insured.
* * * * * *
"C. `Insurable interest' as used in this Section and in R.S. 22:616 includes only interest as follows:
(1) In the case of individuals related closely by blood or by law, a substantial interest engendered by love and affection; and
(2) In the case of other persons, a lawful and substantial economic interest in having the life, health or bodily safety of the individual insured continue, as distinguished from an interest which would arise only by, or would be enhanced in value by, the death, disablement or injury of the individual insured."
[3] "§ 616. Application for insurance required

"No life or health and accident insurance contract upon an individual, except a contract of group life insurance or of group or blanket health and accident insurance as defined in this Code, shall be made or effectuated unless at the time of the making of the contract the individual insured, being of competent legal capacity to contract, in writing applies therefor or consents thereto, except in the following cases:
(1) A spouse may effectuate such insurance upon the other spouse.
(2) Any person having an insurable interest in the life of a minor, or any person upon whom a minor is dependent for support and maintenance, may effectuate insurance upon the life of the minor."