414 So.2d 1328 (1982)
Lovie STATEN, Plaintiff-Appellee/Appellant,
v.
SECURITY INDUSTRIAL INSURANCE COMPANY, Defendant-Appellant/Appellee.
No. 14837.
Court of Appeal of Louisiana, Second Circuit.
April 5, 1982.
*1329 James Sharp, Jr., Monroe, for plaintiff-appellee/appellant.
Victor L. Marcello, Donaldsonville, for defendant-appellant/appellee.
Before MARVIN, JASPER E. JONES and NORRIS, JJ.
NORRIS, Judge.
Security Industrial Insurance Company appeals from an adverse judgment in the amount of $1500 for benefits under an industrial life insurance policy after the trial court found defendant-appellant had failed to prove by clear and convincing evidence that the policy in question should be reformed to provide for coverage in the amount of $150 instead of $1500.
Plaintiff in this matter is the sister of Jeff Staten, who died on September 21, 1980. Prior to his death, the deceased purchased a whole life funeral policy from defendant-appellant. According to the policy introduced into evidence as Exhibit P-1, it was numbered 2484634; the date of issue was November 15, 1978; the "ultimate benefit" or face amount was $1500; the monthly premium was $2.33; the policy was what the company called a "Plan 21;" and plaintiff was the designated beneficiary.
Subsequent to the death of the insured, plaintiff engaged Simms and Gunby Funeral Home in Monroe to arrange for the funeral, and in connection therewith she authorized defendant-appellant to pay the proceeds of the aforementioned policy directly to the funeral home. Defendant-appellant tendered to the funeral home the sum of $150 in full payment of the policy. Thereafter, plaintiff instituted this suit to collect its face amount.
Defendant-appellant answered the suit alleging that the policy issued to the deceased was in the amount of $150 as evidenced by the application for insurance and pleading payment. Thereafter, defendant-appellant filed a motion for summary judgment which was referred to the merits. At a pre-trial conference held two months prior to trial, the parties filed a pre-trial statement in which defendant-appellant set forth the additional contention that the life insurance policy in question provided only for a benefit of $150, that the face amount shown on the policy, i.e. $1500, was a typographical error, and that it should be reformed to reflect the true intention of the parties.
After trial, judgment was rendered in favor of plaintiff dismissing the summary judgment,[1] awarding plaintiff benefits under the policy in the amount of $1500 together with court costs, and rejecting plaintiff's demands for penalties and attorney's fees. It is from this judgment that defendant-appellant suspensively appeals and plaintiff devolutively appeals.
We note that plaintiff failed to pursue her appeal. She did not file any brief or assign any errors even though given an extension until January 22, 1982, to do so. However, our ultimate conclusion in this case makes it unnecessary for us to consider plaintiff's appeal regarding the trial court's rejection of attorney's fees and penalties.
The sole assignment of error is defendant-appellant's contention that the trial court erred in not reforming the policy to reflect the true intention of the parties.
The evidence shows that in November, 1978, Elizabeth Holston, while an employee of Security Industrial Insurance Co.,[2] contacted *1330 the deceased, then age 74, and offered to sell him additional funeral insurance in the amount of $150. An application in accordance with this offer was completed by Mrs. Holston pursuant to information furnished by Mr. Staten. This application, which was signed by him, was submitted to the company which thereafter accepted the risk issuing the instant policy.
Although a correct copy of the application was not attached to the original policy delivered to Mr. Staten, the application (which defendant-appellant contends sets forth the actual agreement between the parties) was introduced and properly admitted into evidence.
La.R.S. 22:618 provides in part as follows:
A. No application for the issuance of any insurance policy or contract shall be admissible in evidence in any action relative to such policy or contract, unless a correct copy of the application was attached to or otherwise made a part of the policy, or contract, when issued and delivered. This provision shall not apply to policies or contracts of industrial insurance subject to R.S. 22:213A(1) and 22:259.
* * * * * *
La.R.S. 22:213A(1) provides:
(1) Entire contract: Changes: This policy, including the endorsements and the attached papers, if any, and in case of industrial insurance, the written application, constitutes the entire contract of insurance. No agent has authority to change this policy or to waive any of its provisions. No change in this policy shall be valid until approved by an executive of the insurer and unless such approval be endorsed hereon or attached hereto.

* * * * * *
La.R.S. 22:259 provides in pertinent part as follows:
All industrial life insurance policies, delivered or issued for delivery in this state, shall contain, in substance, the following provisions, or provisions submitted by the insurer which in the opinion of the commissioner of insurance are more favorable to policyholders:

* * * * * *
(2) A provision that the policy shall constitute the entire contract between the parties, or at the option of the insurer, a provision that the policy and the application therefor shall constitute the entire contract between the parties, and in the latter case the policy must contain a provision that all statements made by the insured shall, in the absence of fraud, be deemed to be representations and not warranties.

* * * * * *
This policy in question, which is an industrial life insurance policy as defined by La. R.S. 22:251 et seq., provides in pertinent part as follows:
IN CONSIDERATION of the representations and agreements made in the application for this Policy, which are hereby made a part of this contract, and the payment to this Company of the monthly premium stated in the schedule on or before each month, beginning with the date of issue of this policy and continuing each month during the continuance of this policy.
* * * * * *
ENTIRE CONTRACT: This policy and the application therefore (sic), constitute the entire agreement between the parties hereto. All matters printed or written on the following pages of this Policy are part of this contract as fully as if recited over the signatures hereto. All statements made by the Insured or on his behalf, in absence of fraud, shall be deemed representations and not warranties...
It was not necessary then for a true copy of the application to be attached to the instant insurance policy to be admissible as evidence. See La.R.S. 22:259(2), supra; Kelmell v. Atlas Life Insurance Co., 238 La. 72, 113 So.2d 609 (1959); and McKithern v. Certified Life Assurance Co., 153 So.2d 155 (La.App.3rd Cir. 1963).
*1331 The application (Exhibit D-1), which was signed by Mr. Staten and identified by Mrs. Holston, shows that the insurance was applied for on November 7, 1978, the amount was $150, it was for a "Plan 21" policy, and the monthly premiums were $2.33. The application is also stamped with the number 2484634. According to the company's rate book, a "Plan 21" policy provided for a monthly premium of $2.33 for $150 worth of coverage, which was shown to be the maximum amount of insurance allowed by the company for a person of Mr. Staten's age. Mrs. Holston's testimony clearly indicates that she explained fully to him that he was purchasing $150 worth of insurance coverage when she filled out his application.
Security Industrial's administrative assistant, Dennis Cabellaro, who was employed by the company in 1973 and who processed that Staten claim, identified Staten's application as the one on file with the company in connection with the instant policy. He identified Exhibit D-2 as Security Industrial's "Plan 21 Special Old Age Funeral Policy" which corroborates the fact that $2.33 is the applicable rate for $150 worth of insurance for a person aged 74.
Cabellaro further testified that the company's general procedure regarding writing policies is to initially receive the application and to determine if the premium has been paid. Thereafter, if the company accepts the risk, the application is given a date of issue and assigned a number. The essential information from the application is then transferred to the company's computer register which is the official list of all policies that Security Industrial has in force on individuals in Louisiana. Cabellaro next identified Exhibit D-3[3] as a true copy of the page from the company's official register pertaining to the instant policy. This exhibit reveals that on November 15, 1978, Jeff Staten, 74 years of age, was issued policy number 2484634, a "Plan 21" policy, in the amount of $150 for a monthly premium of $2.33. This information obviously corresponds with the information contained on the original application.
According to Cabellaro, after the pertinent information is transferred from the application to the official company records, a clerk in the home office takes the original application, pulls a proper blank policy form; and using the application, inserts on the blank form the policy number, issue date, name of insured, the district and debit, amount of insurance, amount of the premium and the designated beneficiary. When questioned regarding who that particular clerk would have been with regard to the policy in question, Cabellaro stated that he felt from the code letter on the policy that it had been typed by an individual named Regina, who at the time of trial was no longer with the company and who he believed had moved to another state.
Mrs. Holston's testimony is corroborated by the application. The information on the company's official register corresponds with that in the application and on the policy with the exception of the face amount.
The only evidence contradicting that offered by Security Industrial is the original policy which had been delivered to the insured after its issuance and the testimony of the plaintiff (belatedly objected to as hearsay and self-serving) that her brother told her he had "$1500 worth of insurance." Plaintiff further testified that she was not present when Staten purchased the insurance from Mrs. Holston and that he first mentioned the insurance to her in late 1980.
There is ample authority in our jurisprudence to allow reformation of an insurance policy when, because of mutual error or mistake, the policy fails to reflect the intent of the parties. Ferguson v. Belcher, 230 La. 422, 88 So.2d 806 (1956); Reynaud v. Bullock, 195 La. 86, 196 So. 29 (1940); Gaudet v. North River, 156 La. 719, 101 So. 118 (1924); Billiot v. Sentry Insurance, 366 So.2d 1017 (La.App. 1st Cir. 1978); MFA Insurance Co. v. Huey, 347 So.2d 63 (La.App.2nd Cir. 1977); Adams v. Ross, 300 So.2d 192 (La. App.1st Cir. 1974); Hebert v. Breaux, 285 So.2d 829 (La.App.1st Cir. 1973); Rougeau v. State Farm Mutual Automobile Insurance Co., et al, 262 So.2d 803 (La.App.3rd *1332 Cir. 1972); Maryland Casualty Co. v. Kramel, 80 So.2d 897 (La.App.2nd Cir. 1955); and Singleton v. First National Life Insurance Co., 160 So. 437 (Orl.App.1935).
The facts in Singleton, supra, are very similar to the facts presented in the instant situation. There, the plaintiff was the beneficiary of a life insurance policy insuring her husband. After his death, she brought suit claiming $129 as the proceeds due under the policy. The defendant insurer's records indicated that the policy was for the sum of $120 instead of $129, and defendant sought reformation of the policy in accordance with the intention of the parties at the time the application was made by the insured. Finding for defendant and reversing the lower court, the appellate court stated:
The law, with reference to the right to reform a contract of this kind, is well settled. In Couch on Insurance, § 1391, page 4982, is found the following:
"Although the policy is presumed to contain the actual agreement of the parties and to express the contract in such words as they have mutually chosen, if, either through fraud of one and mistake of the other, or mutual mistake, or because of the inadvertence, accident, mistake or fraud of the scrivener in reducing the contract to writing, it does not embody therein the actual contract intended or fully set forth the same, equity has jurisdiction to reform it; and this even though the statutes require that the whole agreement between the parties shall be expressed in the policy * * *.
"* * * Although mutuality of mistake is not necessary, where the mistake is due to a clerical error of the scrivener, in which event relief may be had at the suit of either party even though he was the agent of the insurer. * * *"
* * * * * *
That a policy which contains a mistake may be reformed so as to properly express the intention of the parties has been definitely settled in this state. In Brodie v. Atlas Assurance Corporation, 158 La. 695, 104 So. 620, 622, the Supreme Court said: "And a court of equity on a proper case shown will reform a written contract of insurance on the ground of accident, fraud, or mistake. Such mistake, among others, may be one in reference to the amount of insurance, the term and duration of the risk, the property or interest covered by the policy. * * *
* * * * * *
The facts show conclusively that the amount of insurance the parties intended should be issued was $120. The application signed by the insured contains the figure $120.00." It is shown that the premium paid was the correct premium for a policy in the sum of $120, and that an additional premium would have been required to support a policy of $129.
Appellant complains that the trial court's imposition of the burden of proof by "clear and convincing evidence" was error and contends that the proper burden of proof is "by a preponderance of the evidence" in this case. On this point we disagree. We conclude that the better rule is that the burden is on the one seeking the reformation to prove the error, and he must carry that burden by strong, clear and convincing evidence. See Ferguson v. Belcher Reynaud v. Bullock, supra; Rougeau v. State Farm Mutual Automobile Insurance Co., supra; Couch on Insurance 2d, Sec. 66:152; and 43 Am.Jur.2nd 376. That is the rule we apply to this case.
While the trial court correctly enunciated the rule that Security Industrial had the burden of proving reformation of the contract by clear and convincing evidence, we find it incorrectly concluded from the evidence presented that appellant failed to carry that burden. While we are cognizant of the rule that the reviewing court must give great weight to the factual conclusions reached by the trial court, we are not required to affirm the trier of fact's refusal to accept as credible uncontradicted testimony or greatly preponderant objectively corroborated testimony where the record indicates no sound reason for its rejection and where the factual finding itself has been reached by overlooking applicable legal principles. See Arceneaux v. Domingue, *1333 365 So.2d 1330 (La.1978) and West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979).
In the instant case it is obvious that the lower court reached the conclusion that Security Industrial had not proven its right to reformation solely on the basis of plaintiff's self serving, hearsay statement that Staten told her in late 1980, almost two years after the date of the application, that he had $1500 worth of insurance with Security Industrial. This testimony stands alone in contrast to the testimony of defendant's witnesses and to the business records of defendant made when the policy was written. The legal conclusion is clear, convincing and beyond reasonable doubt that the person who filled in the blank policy made a typographical error with regard to the face amount of the policy.
In Louisiana State Bar Association v. Edwins, 329 So.2d 437, 442 (La.1976), the court defined clear and convincing evidence as follows:
"Clear and convincing evidence," in general, means that the fact of guilt must be proven to a greater degree than by "a mere preponderance of the evidence" but less than "beyond a reasonable doubt" ... "The standard requires that the existence of the disputed fact be highly probable, that is, much more probable than its non-existence." (Citations omitted.)
Couch on Insurance 2d, Section 66:160 at page 377 states in part:
* * * * * *
The rule that the evidence must be clear and satisfactory does not mean that it must be undisputed.
Reformation cannot be denied merely because the evidence is conflicting and the solution of the problem difficult.
The rule that one seeking the reformation of the insurance policy on ground of mistake must produce full, clear, unequivocal and convincing evidence does not require that that proof meeting such requirements must also be uncontradicted as distinguished from evidence contradictory within itself.

* * * * * *
The overwhelming weight of the evidence introduced in this case convinces us that defendant-appellant proved by clear, convincing, and the strongest possible evidence that on November 7, 1978, Jeff Staten intended to purchase a life insurance policy in the amount of $150 and on that same date, Security Industrial, through its agent, Mrs. Holston, intended to sell a life insurance policy in the amount of $150. The proper premium of $2.33 per month was calculated for this amount of insurance. Thereafter, when the blank policy was filled in at Security Industrial's home office, a typographical error was made in that the face amount of the policy was incorrectly typed "$1500" rather than "$150." This mistake was mutual as to both parties in that the policy as issued and delivered did not express nor conform to their original intentions. Accordingly, the policy is hereby reformed to reflect the correct face amount of $150.
For the reasons assigned, the judgment of the lower court is reversed, the insurance contract is ordered reformed, and judgment is rendered in favor of plaintiff, Lovie Staten in the amount of $150. Costs in the lower court are to be cast against defendant-appellant, and plaintiff is cast for costs of this appeal.
JUDGMENT REVERSED AND RENDERED.
NOTES
[1] Defendant appellant has assigned as an error the trial court's dismissal of his motion for summary judgment. We do not address this issue as this is not an appealable issue.
[2] Mrs. Holston, at time of trial, was no longer employed by Security Industrial.
[3] Exhibits D-2 and D-3 were admitted without objection.