501 So.2d 1037 (1987)
EARL WILLIAMS CONSTRUCTION COMPANY, INC., et al., Plaintiff-Appellant,
v.
THORNTON & BROOKS, INC. et al., Defendants-Appellees-Appellants.
No. 18366-CA.
Court of Appeal of Louisiana, Second Circuit.
January 21, 1987.
Rehearing Denied February 19, 1987.
Writ Denied April 20, 1987.
*1038 Nelson, Hammons & Johnson by Walter D. White, Shreveport, for plaintiff-appellant, Earl Williams Const. Co., Inc.
Mayer, Smith & Roberts by Vicki C. Warner, Shreveport, for defendant-appellee-appellant, Employers Ins. of Wausau.
Jack R. Gamble, Jr., Mansfield, for defendant-appellee-appellant, Thornton & Brooks, Inc.
Before JASPER E. JONES, FRED W. JONES, Jr. and NORRIS, JJ.
FRED W. JONES, Jr., Judge.
A dozer owned by Earl Williams Construction Company, Inc. ("Williams"), being transported for a fee by Thornton and Brooks ("T & B"), was extensively damaged when the transporting truck went under an overpass. The dozer struck the overpass and was knocked from the truck trailer.
Although the ensuing litigation involved numerous parties and corresponding pleadings, we refer only to those parties and pleadings pertinent to this appeal. Williams and its insurer sued T & B and its insurer, Employers Insurance of Wausau ("Wausau"), for alleged damages resulting from the accident. T & B filed a third party demand against Wausau, alleging insurance coverage. The latter denied coverage, asserting that the insurance policies it had issued to T & B did not provide coverage for losses incurred while hauling heavy equipment for a fee.
Prior to the trial it was stipulated that T & B was liable for the damage caused by the accident. Critical issues left for trial were the question of damages and the liability of Wausau.
Judgment was rendered in favor of Williams and its insurer, in separate amounts totaling $52,226.01, against T & B and Wausau in solido; reforming the insurance contract between T & B and Wausau to provide liability coverage for the *1039 accident in question; and in favor of T & B and against Wausau for $7,500 attorney fees.
Wausau appealed, contending the trial judge erred in (1) reforming the insurance contract to provide coverage for the accident and in awarding attorney fees and (2) assessing the loss at an excessive amount.
Williams also appealed, asserting the trial court committed error in (1) failing to award Williams a sufficient sum to compensate for the value of the damaged dozer; (2) failing to award expenses for the rental of a substitute dozer; and (3) failing to award for Williams' lost profits.
T & B answered Wausau's appeal, asking for an increase in the attorney fee award to compensate for the cost of legal representation on appeal.

Insurance Coverage
Wausau argues that its insurance contract with T & B should not have been reformed to provide cargo coverage since it was never asked for such coverage and, consequently, did not intend to provide it.
Reformation of an insurance policy is permitted when, because of mutual error or mistake, the policy fails to reflect the intent of the parties. MFA Life Insurance Co. v. Huey, 347 So.2d 63 (La.App. 2d Cir.1977). The burden is on the one seeking reformation to prove the error. Staten v. Security Industrial Ins. Co., 414 So.2d 1328 (La.App. 2d Cir. 1982).
T & B is a relatively large oilfield contractor, domiciled in Mansfield, which apparently purchased all of its insurance from Wausau. Evidence indicated that this was the largest insurance account serviced by Wausau out of its Shreveport office. Wausau had provided insurance coverage to T & B for some 20 years prior to the accident and annual premiums averaged in the neighborhood of $150,000. Wausau furnished numerous insurance policies to T & B, including worker's compensation and inland marine. However, none of those policies provided coverage for cargo handled by T & B for a fee. In fact, it does not appear that Wausau representatives were even aware of this undertaking by T & B. The latter's president, although assuming the existence of cargo coverage, admitted never discussing heavy hauling operations with Wausau employees.
We agree with Wausau that, according to the record evidence, T & B did not prove that Wausau intended to provide it with cargo coverage. Therefore, the trial judge erred in reforming the insurance contract to provide this coverage.
On this issue, in written reasons for judgment the trial judge observed: "Employers Insurance of Wausau failed in its duty to adequately cover Thornton & Brooks."
Since there was no basis for reforming the insurance contract, the remaining question is whether Wausau is liable for negligently failing to provide T & B with cargo coverage at the time of the accident.
The accident in question occurred on June 1, 1982. In July 1980 T & B had its certificate from the State Public Service Commission amended to allow it to haul any equipment, whether owned by T & B or anyone else, of excess size and weight. Prior to that T & B had procured a salt water certificate, of which Wausau was aware and for which it provided insurance coverage. That coverage was not broadened to include cargo hauling for a fee, although T & B had coverage when the equipment it hauled was either owned or borrowed by it.
There was evidence that T & B's president, knowledgeable in the operation of his business but with little formal education, depended upon Wausau representatives to provide adequate insurance coverage for business endeavors.
Paul Moore handled the T & B account for Wausau from 1976 to 1980. He used the standard insurance questionnaire on an annual basis to ascertain that T & B was adequately covered.
The T & B account was serviced by Harry Sadler from 1980 to 1981. Sadler was succeeded by Tom Erdmann. Neither Sadler *1040 nor Erdmann ever employed the insurance checklist to determine if T & B lacked coverage for any of its operations, including cargo hauling for a fee.
While Erdmann was handling the account a pickup truck belonging to T & B and its contents were destroyed by fire. Wausau denied coverage on an item in the truck that belonged to another company. A new policy had to be issued to cover items that T & B carried in its equipment but did not own. Even after this occurrence Erdmann did not use the recognized checklist to question whether T & B might be conducting other activities for which it had no insurance coverage.
Terry Hemmings, senior safety consultant for Wausau, monitored insurance policies and the holders' program dealing with liabilities. He admitted to a lack of awareness that T & B was hauling cargo for a fee.
To summarize, over the years Wausau had established a close business relationship with T & B, specializing in meeting the latter's insurance needs. T & B came to rely upon Wausau to provide adequate insurance coverage for its business operations. We hold that, because of this relationship, Wausau had a duty to discover, through the employment of means generally recognized in the insurance industry, any gap in insurance coverage relating to the business endeavors of T & B. However, despite the occurrence of significant events that should have invited further inquiry concerning business coverage, Wausau representatives did not pursue the matter by utilizing standard insurance business methods, including an insurance questionnaire. Therefore, we find that Wausau breached its duty to T & B to provide insurance coverage for the damage caused by the accident in question. For its negligence Wausau is liable to T & B on the third party demand for the loss sustained by it as a result of this claim by Williams. Since there was not coverage under an insurance contract, judgment should not have been rendered in favor of Williams against Wausau on the main demand.
In the absence of either contractual or statutory authority for the award of an attorney fee, we conclude that the trial court erred in making this award.

Quantum
On this question Wausau argues the trial court awarded excessive damages because it did not allow for depreciation on the damaged dozer and Williams failed to mitigate its damages. On the other hand, Williams contends the value of the dozer was higher than the amount allowed by the trial judge.
Damages are measured by the loss sustained by the obligee and the profit of which he has been deprived. La.Civil Code Art. 1995. Where property has been damaged through the fault of another and legal recourse is sought, the primary objective of the judicial process is to restore the owner of the damaged property, as nearly as feasible, to his status immediately prior to the damaging accident. If it is not practical to repair the damaged property, the objective of restoring the injured party to his prior position may be achieved by awarding him the difference in the value of the property before the damage was inflicted and immediately afterwards. Petrol Industries v. Gearhart Owen Industries, 424 So.2d 1059 (La.App. 2d Cir.1982).
In the assessment of damages wide discretion is accorded to the trial judge. La. C.C. Art. 2324.1.
According to the evidence, Williams purchased the dozer in question about eight months prior to the accident for $64,226.01. After the accident the dozer had a salvage value of $12,000. The trial judge deducted the salvage value from the purchase price and concluded that this was Williams' loss. Wausau argues that the dozer's purchase price should have been depreciated by 8% to determine its actual value at the time of the accident. However, there is record evidence that the value of the dozer at the time of the accident was in excess of $80,000. There was also testimony that the dozer had been well-maintained and was in excellent condition prior to the accident.
*1041 Under the circumstances, we find no abuse of discretion by the trial judge in his computation of the value of the damaged dozer.
Williams also contends it should have been awarded the rental charge for a substitute dozer because it was unable to purchase another dozer until this claim was settled. It is correct that damages for loss of use are measured by the rental cost of a substitute vehicle. Alexander v. Qwik Change Car Center, Inc., 352 So.2d 188 (La.1977). However, in this case Williams should have realized its dozer was a total loss and, if necessary, made arrangements to purchase another one. The trial judge did not err in rejecting the claim for rental.
The same reasoning supports the trial court's rejection of Williams' demand for business losses caused by the loss of the use of the dozer. If those losses occurred, which is questionable, they could have been eliminated by an immediate purchase of another dozer.

Decree
For the reasons set forth, we amend the judgment of the trial court to delete the fifth paragraph thereof, which awarded attorney fees to Thornton & Brooks, Inc. and recast the second, third and fourth paragraphs to read as follows:
"IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Earl Williams Construction Company, Inc., and against Thornton & Brooks, Inc. for $24,476.01, with legal interest thereon from date of judicial demand, May 9, 1983, until paid;
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Fireman's Insurance Company, and against Thornton & Brooks, Inc. for $27,750.00, with legal interest thereon from date of judicial demand, May 9, 1983, until paid;
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Thornton & Brooks, Inc., and against Employers Insurance of Wausau, on the third party demand, for $52,226.01, with legal interest thereon from May 9, 1983, until paid."
As amended and recast, the judgment of the trial court is affirmed. Costs of appeal are divided equally among Earl Williams Construction Company, Inc., Thornton & Brooks, Inc. and Employers Insurance of Wausau.