**Joel S. GREEN**

v.

**SHRM CATERING, INC., et al.**

**Civ. A. No. 85–0820.**

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

April 16, 1987.

Robert A. Redwine, New Orleans, for Angelina Cas. Co.

W. Paul Hawley, Lafayette, for Mobil Producing Texas & New Mexico, Inc.

Earl G. Pitre, Lake Charles, for Zurich Ins. Co., Robert Murray Collins and Ronald Malcolm Pateman, Underwriters at Lloyd's, London.

Joseph B. Guilbeau, New Orleans, for SHRM Catering Services, Inc.

Gerald C. Delaunay, Lafayette, for Supreme I Management, Inc. and Supreme Marine I.

Thomas E. Balhoff, Baton Rouge, for Louisiana Ins. Guar. Ass'n.

## OPINION

SHAW, District Judge.

I.   Procedural Background.

The M/V TECHE I is a self-propelled jack-up vessel owned by Supreme Marine I, a Louisiana Partnership in Commendam ("Partnership"), and operated by Supreme I Management, Inc. ("Supreme I"), a Louisiana corporation. Supreme Management, Inc., ("Management"), a Louisiana corporation, was the general partner in Partnership, and Management owned by Supreme I.

Plaintiff alleged that, while he was employed by SHRM Catering, Inc. as a cook aboard the M/V TECHE I on March 11, 1984, he was injured when a leg of the vessel broke. He sued Mobil Producing Texas and New Mexico, Inc. ("Mobil"), alleging that Mobil was liable to him as the charterer of the vessel. He also sued the various Supreme entities as owners/operators of the vessel, and Zurich Insurance Company ("Zurich") as the marine P & I liability insurer of the Supremes. Prior to trial, plaintiff settled his claims with these various entities.

Mobil sued Angelina Casualty Company ("Angelina"), alleging that Angelina owed Mobil a defense and indemnity under Angelina's contractual liability coverage of the time charter's indemnity provisions and/or that Angelina owed Mobil defense and coverage for plaintiff's claims against Mobil, because Mobil was a "blanket" insured under Angelina's policy. Mobil also sued Zurich, alleging that Zurich's policy must be reformed to reflect the intent of the parties

that Mobil would be named as an additional insured. Mobil also sued the various Supreme entities as indemnitors. The various Supreme entities sued Angelina and Zurich, seeking coverage of the contractual indemnity claim by Mobil. Zurich denied that it owed a defense to Mobil against plaintiff's claims, and sued Angelina as the alleged concurrent insurer of the Supremes' tort liability.

Angelina contends that the intent of the parties to its policy was that the policy would not provide any coverage for its insureds', including Mobil's, marine P & I liability or for Supreme I's contractual liability assumed in connection with the operation of a watercraft. Angelina buttresses this contention by asserting that by mistake of the person who put Angelina's policy together or by mutual mistake of the parties, the policy as issued did not carry out that intent, so that Angelina is entitled to judicial reformation of the policy in order to carry out that intent.

SHRM asserts that it is entitled to direct reimbursement and indemnity from the Louisiana Guaranty Association ("LIGA"), for all amounts in attorney's fees, maintenance, cure, and related expenses it has incurred in this lawsuit. LIGA counters that it does not owe SHRM indemnity because the maintenance and cure benefits SHRM has paid constitute "ocean marine" insurance, and that the payments therefore fall within the scope of LSA–R.S. 22:1377, which statute states:

> [The Insurance Guaranty Association Law] shall apply to all kinds of direct insurance, except life, health and accident, title, disability, mortgage guaranty, and ocean marine insurance.

LSA–R.S. 22:1377.

## II. Findings of Fact.

At all pertinent times, plaintiff was an employee of SHRM, as a stewart on board the TECHE I. SHRM was neither the owner nor the charterer of the TECHE I at the time of plaintiff's accident on March 12, 1984. This court has granted SHRM's motion for summary judgment, dismissing all claims brought against SHRM for legal responsibility for having caused or for having contributed to the plaintiff's accident.

The Standard Workmen's Compensation and Employers' Liability Policy No. WC 27 24 39, issued to SHRM by Transit Casualty Company ("Transit"), was in full force and effect and covered SHRM from November 1, 1983, through November 1, 1984. SHRM and LIGA have stipulated that SHRM has incurred a total of $16,906.33 in attorney's fees, costs and expenses in the defense of and in the prosecution of this claim through April 1, 1987.

Transit was declared insolvent by order of the Circuit Court of Cole County, State of Missouri, on December 3, 1985. Pursuant to its obligations under the general maritime law and the Jones Act and following the demise of Transit, SHRM has paid from December 9, 1985, through March 27, 1987, maintenance and cure and related benefits to or on behalf of plaintiff in the amount of $9,460 for maintenance benefits and $2,561.01 for medical and related expenses.

Pursuant to a time charter agreement dated February 10, 1983, the M/V TECHE I was chartered by Mobil. Only Supreme I Management, rather than Supreme Marine I, signed the agreement, although Supreme I Management "or its inter-related or affiliated entities" are identified as being the "Owner" of the rig. The time charter contained the following indemnity provisions:

a. OWNER agrees that it will hold CHARTERER harmless from any and all claims or demands made against the CHARTERER or the vessel which are based on the acts of the OWNER, its employees, subcontractors and captain or members of the crew of the vessel while performing the work herein undertaken. This article applies to all claims based on the acts of an individual whose services are secured by OWNER even though he may become, in law and in fact, an employee of the CHARTERER while performing the services.

b. OWNER indemnifies and holds CHARTERER harmless against any and all claims or suits which may be brought against CHARTERER by an individual

or assignee, whose services are engaged by the OWNER to perform the work herein undertaken, even though such suit or claim may be caused or brought about in whole or in part by the negligence of the CHARTERER, or its agents, employees, or subcontractors, or the unseaworthiness of vessels or craft.

The time charter further required the Owner to have Mobil named as an additional insured in all policies obtained by the owner.

Mr. Larry Degeyter ("Degeyter") was a vice president of Supreme I, Angelina's insured. Mr. Dan Dever ("Dever") was an insurance broker. Degeyter met with Dever and, having no idea which insurance coverages were needed to cover Supreme I's risks, Degeyter simply instructed Dever to obtain complete coverage of all of the risks. In addition to the dollar amount of coverage he wanted, Degeyter also instructed Dever that contractual liability coverage was required and that any company for which the M/V TECHE worked was to be an additional insured in all policies. He then delegated to Dever the responsibility to negotiate with the various insurers which risks would be covered by which policies.

Mrs. Veronica Caruso ("Caruso") was an underwriter for Angelina. She and Dever negotiated the coverages which would be provided by Angelina's policy. They agreed that Angelina's policy would not provide marine P & I coverage of bodily injury to persons on watercraft. That coverage was to be provided by a marine P & I policy issued by another insurer. They also agreed that contractual liability would not be provided by Angelina's policy for indemnity obligations assumed in connection with the operation of watercraft, since the indemnitees would be protected as named insureds in the separate marine policy. It was Caruso's understanding that Dever was the insured's agent.

Pursuant to the negotiations between Dever and Caruso, Caruso issued on behalf of Angelina a comprehensive general liability ("CGL") policy to Supreme I, as the insured. In order to accomplish the negotiated exclusion of bodily injury ("P & I") coverage, Caruso attached to Angelina's policy an endorsement which read as follows:

IT IS AGREED THAT THIS POLICY DOES NOT PROVIDE ANY COVERAGE THAT IS PROVIDED UNDER THE FOLLOWING POLICIES:

Lloyd's London # 84MKL1133A Total Limit of Liab. $1,000,000

Lloyd's London # M83KL1009

Atlas Assurance # GM504301 Total Limit of Liab. $14,000,000

Southern American # H63591

Caruso thought the listed policies included the primary P & I policy, but, in fact, they were excess P & I policies. She was unaware of Zurich's primary P & I policy.

Both Dever and Caruso testified emphatically and unequivocally that Zurich's P & I policy should have been included in the list of policies contained in the endorsement by which Angelina sought to exclude marine P & I coverage. Dever testified that, had he noticed after Angelina's policy had been issued that Zurich's P & I policy had been omitted from the endorsement's listing, he would have contacted Caruso and he would have requested that she correct the mistake. This omission, however, did not attract his attention. Neither Dever nor Caruso intended that Angelina's policy would provide "double coverage" with any other policy.

In order to implement the negotiated exclusion of marine contractual liability coverage, Caruso left in the policy Exclusion "O", in Angelina's contractual liability coverage. Exclusion "O" states:

This insurance does not apply:

(o) to bodily injury or property damage arising out of construction, maintenance or repair of watercraft or loading or unloading thereof;

The intent of Caruso and Dever was that contractual liability coverage would be provided by Angelina when the M/V TECHE I was jacked up and was no longer a "vessel" to which federal maritime law would apply. In that situation, state law would apply and contractual liability coverage

was needed. While the M/V TECHE I was operating as a vessel, no contractual liability coverage by Angelina was needed because the indemnitees would be protected as additional insureds in the separate marine P & I policies. Neither Dever nor Caruso intended that Angelina's policy would provide "double coverage" with any other policy.

Both Dever and Caruso testified unequivocally that a CGL policy such as Angelina's was not intended to cover marine P & I risks and that the method employed by Caruso to specifically exclude coverage of such risks was both usual and proper. The endorsement Caruso used would have had the desired effect, but for the mistaken omission of Zurich's primary P & I policy.

In addition, Dever testified unequivocally that the Supremes specifically authorized and directed him to have Mobil named as an additional insured in the Zurich policy, and that he communicated this information to Zurich. Zurich produced absolutely no evidence to refute this testimony.

### III. Conclusions of Law.

As is the case with other insurance agreements, insurance policies may be reformed if, through mutual error or fraud, the policy as issued does not express the agreement of the parties. *See, e.g., Staten v. Security Industrial Ins. Co.*, 414 So.2d 1328 (La.App. 2d Cir.1982). In the absence of fraud, the party seeking reformation has the burden of proving a mutual error in the written policy.

■ Clear and convincing evidence of mutual mistake is necessary only when a party seeks to prove that the insurer had insured a substantially different and greater risk than that expressed by the written policy. In contrast, when a party seeks to reform the policy in a manner which does not substantially affect the risk assumed by the insurer, the normal burden of proof by a preponderance of the evidence is sufficient. *Bonadona v. Guccione*, 362 So.2d 740 (La.1978). In the instant case, Angelina need only prove by a preponderance of the evidence that the Angelina policy should be reformed, because Angelina seeks not to delete an express coverage exclusion.

■ The parties seeking coverage by Angelina contend that, since Dever was only a broker and was not an agent of the Supremes, the Supremes' intent cannot be determined by his testimony. This argument is sciolistic. Dever was clearly the agent of the Supremes insofar as he negotiated which risks would be covered by which policies. Through Degeyter, the insured specifically delegated to Dever the authority to negotiate and, thus, Degeyter designated Dever as the agent of the Supremes. *Thibodeaux v. Lumbermen's Mut. Cas. Co.*, 448 So.2d 888 (La.App. 3rd Cir.1984).

■ In cases where the unilateral mistake of the person who drafts the policy fails to reflect the intent of the parties, the court may reform the policy to correct the mistake. In *Staten v. Security Industrial Insurance Co.*, 414 So.2d 1328, 1333 (La.App. 2d Cir.1982), a scrivener made a typographical error in that the face amount of the policy was incorrectly typed "$1500", rather than "$150." This mistake was mutual as to both parties, and the court reformed the policy to reflect the intent of the parties. *Id.* at 1333. Moreover, in certain instances of mistake, error, or negligence on the part of an agent or employee of an insurer, a policy erroneously issued will be reformed to conform with and to reflect the original intent of the parties. *Billiot v. Sentry Insurance*, 366 So.2d 1017, 1020 (La.App. 1st Cir.1978).

■ The court must now determine the intent of Angelina and of the Supremes at the time Angelina's policy was drafted. It is emphatically clear that both of the parties intended that the policy not provide any coverage for either Supreme I's or Mobil's marine P & I liability, or for Supreme I's and/or Mobil's contractual liability assumed in connection with the operation of a watercraft. Thus, the policy must be reformed so as to reflect the intent of the parties. *Staten v. Security Industrial Insurance Co.*, 414 So.2d at 1333; *Billiot v. Sentry Insurance*, 366 So.2d at 1020.

Consequently, the Zurich policy must be added to the list contained in the Angelina policy which defines coverage for which Angelina is not responsible, and Zurich, rather than Angelina, covers the liability of Supreme under the marine P & I coverage. Furthermore, Zurich, rather than Angelina is responsible for the coverage of Supreme I's contractual liability assumed in connection with the operation of a watercraft.

■ Finally, Mobil's claim against Zurich remains, wherein Mobil alleges that Zurich's policy must be reformed to carry out the intent of the parties that Mobil would be named as an additional insured. The issue is whether or not the Zurich policy should have included an endorsement, either specifically or by blanket endorsement, naming Mobil as an additional named insured. Dever's unrefuted testimony that the Supremes specifically authorized and directed him to have Mobil named as an additional insured in the Zurich policy and that he communicated this information to Zurich, convinces this court that this addition was the intent of the Supremes and of Zurich. Thus, had Zurich's P & I policy contained the "blanket name and waive" provisions to which Zurich's agents agreed when they bound coverage with Dever, Zurich would have owed Mobil a defense, at least until it was judicially established that Mobil had no liability as a bareboat charterer. The court will therefore reform the Zurich policy to include Mobil as an additional insured. *Staten v. Security Industrial Insurance Co.*, 414 So.2d at 1333; *Billiot v. Sentry Insurance*, 366 So.2d at 1020.

■ The issue remains as to whether or not SHRM is entitled to direct reimbursement and indemnity from LIGA for all amounts in attorney's fees, maintenance, cure, and related expenses it has incurred in this suit. This case was partially settled three days before trial. Pursuant to the settlement agreement, the defendant vessel owner agreed to reimburse SHRM $10,000 for past maintenance and cure benefits paid to or on behalf of Green, and SHRM and LIGA agreed to allow SHRM to reserve its rights to litigate the issue of LIGA's responsibility for the remaining $2,021.01 in maintenance and cure paid and attorney's fees incurred by SHRM. The issue before the court is whether or not SHRM's maintenance and cure payments, made pursuant to its Standard Employers' Liability Insurance Policy, constitute "ocean marine" insurance, within the meaning of LSA–R.S. 22:1377, and thus do not fall within the scope of LIGA's protection. In *Cole v. L & L Sandblasting, Inc.*, 708 F.Supp. 142 (W.D.La.1987), this court was confronted with the issue of whether or not Transit's Standard Employers' Liability Policy, which, as in this case, included maritime endorsements and coverage for claims arising out of an offshore accident, fell within the obligations of LIGA. This court, citing *Blair v. Sealift, Inc.*, C.A. No. 84–5367, 1986 WL 15859 (E.D.La., Aug. 19, 1986), emphatically stated that:

> The laudable public policy of liberal construction of the LIGA Act and its stated purpose would be better served by looking at the type of insurance policy in question, not the particular claims seeking coverage under the policy in question.

This court further held in *Cole* that Transit's Employers' Liability Policy was not ocean marine insurance, and that LIGA should provide coverage. As in this case, and in *Blair* and in *Cole*, LIGA had assumed Transit's obligations under the Standard Employers' Liability Policy where claims were being asserted by a seaman injured while he worked upon a vessel in the navigable waters of the United States.

The Transit policy at issue in this case, which is not different in any significant manner from the policies in *Cole* and in *Blair*, stated:

> [LIGA shall] pay on behalf of the insured all sums which the insured shall become legally obligated to pay ... [LIGA shall further] defend any proceeding against the insured seeking such benefits and any suit against the insured alleging such injury and seeking damage on account thereof.

Because Transit's policy is not "ocean marine" insurance, within the meaning of

LSA–R.S. 22:1377, LIGA is now obligated to pay the remaining portion of maintenance and cure and all attorney's fees, legal costs, and expenses incurred by SHRM herein. LSA–R.S. 22:1382(1)(b).

### IV. Conclusion.

Pursuant to a mistake on the part of Caruso, who constructed the Angelina policy, the policy was erroneously issued by Angelina, and it is incumbent upon this court to reform the policy to conform with and to reflect the original intent of the parties. The intent of both the Supremes and of Angelina was that Angelina would not provide any coverage for either Supreme I's or Mobil's marine P & I liability or for Supreme I's contractual liability assumed in connection with the operation of a watercraft.

Moreover, the court has determined that LIGA is obligated to pay the remaining portion of maintenance and cure and all attorney's fees, legal costs, and expenses incurred by SHRM herein.

Accordingly, Angelina, Mobil, and the Supremes are entitled to costs from Zurich. Mobil is entitled to be recompensed by Zurich in the amount of SIX THOUSAND NINE HUNDRED FIVE AND 92/100 ($6,905.92) DOLLARS, the amount it expended in defense of this case. The Supremes are entitled to be recompensed by Zurich in the amount of TWO THOUSAND FIVE HUNDRED FIFTY AND 25/100 ($2,550.25) DOLLARS. Neither Mobil nor the Supremes are entitled to be recompensed by Zurich for non-defense costs they incurred in pursuing coverage from their insurers. *Breitenbach v. Green,* 186 So.2d 712 (La.App. 4th Cir.1966). Finally, SHRM is entitled to be recompensed by LIGA in the amount of SIXTEEN THOUSAND NINE HUNDRED SIX AND 33/100 ($16,906.33) DOLLARS.

Counsel for Angelina Casualty Company shall submit a judgment in accordance with this ruling within ten (10) days.