## TOPPS v. NORTH BRITISH & MERCANTILE INS. CO.*

### No. 4466.

Court of Appeal of Louisiana.
Second Circuit.

June 5, 1933.

*Rehearing denied July 15, 1933.

471

Hardin & Coleman, of Shreveport, for appellant.

Edward L. Gladney, Jr., of Bastrop, for appellee.

TALIAFERRO, Judge.

The purpose of this suit is to correct and reform a policy of fire insurance on the ground of mutual mistake, and to recover the full amount thereof, if, and as, reformed and corrected, with attorney's fees and penalties, the property insured having been totally destroyed by fire during the life of the policy.

The facts are, in the main, admitted. Plaintiff owned a modest house and lot in West Bastrop, Morehouse parish, La. A mortgage rested against it. She effected fire insurance on the house through Mr. S. Alvin Leopold, local agent of defendant. This policy issued April 10, 1928, for $150, with three-year term, to which was attached the customary loss payable clause in favor of E. E. Hollins, who had acquired the mortgage against the property. The insured house was enlarged and for the payment of an additional premium, the amount of the policy of insurance was increased to $400. On April 10, 1931, another policy issued to plaintiff by the defendant, through its said agent, for the term of three years, but the amount thereof was fixed at $150, with loss clause in favor of Hollins, the mortgagee. On April 1, 1932, the insured house was destroyed by fire. At that date the mortgage against the house and lot amounted to about $300. The premium under the first policy was paid by plaintiff, and that under the last one was paid by the mortgagee, to whom was delivered both policies.

The position of plaintiff, and the character of her demand, is clearly reflected from certain allegations of her petition, which we quote:

"VII. That on or prior to April 10, 1931, said defendant through its agent, S. Alvin Leopold, renewed said policy acting under agreement between parties to extend said insurance in the amount of Four hundred and No/100 ($400.00) Dollars by issuing a new policy identical with the first policy and said new policy, No. GC–461349, plaintiff's exhibit 'A', was delivered to E. E. Hollins, mortgagee, named in said policy.

"VIII. That through error and/or mistake, defendant, its agent, employees, etc., in preparing said new policy failed to copy the endorsement increasing said insurance from

One Hundred Fifty and No/100 ($150.00) Dollars to Four Hundred and No/100 ($400.00) Dollars, and because of said error the policy, plaintiff's exhibit 'A,' was issued without said endorsement increasing the amount of said insurance.

"IX. That said policy upon delivery to E. E. Hollins was not inspected or read by Hollins nor by your petitioner, nor did the aforesaid error or mistake come to the attention of your petitioner or defendant until some time after April 1, 1932, your petitioner believing the amount of insurance to be Four Hundred and No/100 ($400.00) Dollars, as in the first policy.

"XIII. That because of said mutual mistake contrary to the intention of the parties thereto, said policy should be reformed and corrected and the amount thereof should be Four Hundred and No/100 ($400.00) Dollars instead of One Hundred Fifty and No/100 ($150.00) Dollars."

Defendant contends that there was no renewal of the first contract of insurance held by plaintiff, and that same expired by its own limitations on April 10, 1931, and that on that date its said agent wrote a new policy covering said property for $150, and that this was done without any agreement between any parties to extend any insurance, " * * * but was written for the sum of One Hundred Fifty ($150.00) Dollars, solely upon the initiative of your defendant's agent, and was accepted by the plaintiff herein and by her mortgagee, E. E. Hollins, as a fire insurance contract for said sum of $150.00, which was all the insurance that your defendant would write at that time covering said property; that your defendant has always admitted liability in the said sum of $150.00 and has offered to pay the same, forwarding valid draft in payment thereof, to the plaintiff herein, but she has refused to accept same, and your defendant is liable for no penalties or attorney's fees herein."

Defendant specifically denies that either it, or its agent, made any mistake or error in writing the new or second contract of insurance, but did write a fire insurance contract, complete in itself, for the term, premium, consideration, and amount named therein, which was the full amount that it obligated itself and intended to obligate itself to pay. It is further averred that, " * * * if the plaintiff herein failed and neglected to read her policy contract of insurance for the period from April 10, 1931, to April 1, 1932, she was guilty of carelessness and negligence and of laches, which laches your defendant specifically pleads against petitioner; and it is specifically averred that the obligations of the parties are governed by the written contract and not by what petitioner might believe with reference thereto."

Defendant also avers, and the record sustains it, that after the fire, plaintiff executed

and filed with it proof of loss for the amount of the policy, viz., $150, wherein she stated, under oath, that this was all she claimed under the policy, and it is argued therefrom that "* * * she thereby admitted the correctness of the amount of the obligation of your defendant to her for insurance on said property, and is thereby estopped to claim any additional amount over and above the said amount of $150.00, which said estoppel and admission your defendant specifically pleads against the petitioner herein. * * *"

Defendant alleges, and plaintiff admits, that $150 was offered by it in full settlement and satisfaction of its liability under the insurance policy sued on, and that the offer was refused by plaintiff; and it is likewise alleged and proved that premium only for $150 insurance was asked for and paid under the second policy, and that no additional premium was offered or tendered by plaintiff or by any one else; that if plaintiff's contentions are correct, which is denied, that her claim for $250 over and above the amount of her policy would be ineffectual, null and void, for want of consideration, which is specially pleaded and urged.

From a judgment for plaintiff, as prayed for, defendant appealed.

When the first policy on plaintiff's property expired defendant's agent in Bastrop, without any request or application from Hollins, the mortgagee, or from plaintiff or any one acting for her, in keeping with his custom, issued and signed the policy sought to be reformed, and herein sued on. The blank policy form was filled out by the agent's stenographer. This agent admits that through inadvertence on the part of his stenographer, the indorsement on the old policy whereby the amount of same was increased to $400, was overlooked in the preparation of the new contract. After the new policy had been issued, Hollins was notified thereof and he came to the agent's office where the matter was discussed. He paid the premium and was given the policy. He deposited same in his safety bank box without reading it. Plaintiff had no part in these transactions between the defendant's agent and Hollins. She was not requested to pay the premium on the new policy by defendant or by Hollins. She had no direct knowledge that this policy was not for $400, but its issuance was mentioned to her by Hollins who, at the time, was under the impression and belief that both policies were for $150, and only thought otherwise after plaintiff had exhibited a receipt from the defendant's agent showing that an additional premium had been paid for the increase in the original policy. This occurred several months before the fire, but none of the parties inspected the new policy, then in the possession of Hollins, to be enlightened as to the true facts. Hollins assumed that the new policy was simply a renewal of the old one with same term and same protection against loss from fire. Plaintiff evidently shared a like belief. A casual reference to the insurance contract would have corrected the error into which they had fallen.

Mr. Leopold, defendant's agent, testified that it was the rule and custom of his office, a few days prior to or at the end of each month, to look over the policies in force and to issue new ones in lieu of those about to expire, if the particular policy was considered desirable business; that his stenographer attended to the clerical phase of the business, presenting the policies to him for signature, after making them up; that he would closely look over the new policies before signing them, and discuss with the stenographer the value of any property insured if there was any doubt or question concerning same, and make reductions in cases where it was determined such should be done, and then the new policy would be drafted accordingly. He further stated that if the policy in question had been made up for protection against fire to the amount of $400, as was the original contract, he would have inspected the property described therein, before signing it, and would have placed a conservative value thereon. On this subject he says: "I do not believe we would have issued a policy for $400.00 on it. It is our custom now in writing new insurance to reduce the insurance. We are doing that on account of the decreased value. In this case if we thought $400 was too much insurance, we would have written a less amount and delivered it."

Mr. Leopold makes it clear that he did not consent to, and had no fixed intention to, carry insurance on plaintiff's property for $400. He consulted no one before issuing the new contract. He does make it clear that, had his stenographer not overlooked the indorsement on the original policy increasing the insurance to $400, the new policy would have been submitted to him for signing with $400 as the maximum of his company's liability thereon, but he does not say he would have signed the new policy without investigating the value of the property insured, but does say he would have inspected it to determine whether its value and condition justified insurance thereon to the amount of $400. Three years had elapsed since issuance of the first policy. Values of improved property, to the knowledge of all, have materially decreased during the period, and this fact was not being overlooked by defendant's agent when writing new policies or renewing old ones.

The power of courts, through the exercise of their equity jurisdiction, to correct and reform contracts of insurance for error, mutual mistake, etc., is no longer a debatable question in Louisiana. However, before

the arm of the court will move in such cases, it must be clearly shown that the error or mistake complained of is mutual, or that there is error or mistake on one side and fraud on the other. Error or mistake on one side only does not furnish ground for reformation of the contract, but may be availed of in an action to have the contract rescinded. The right of a court to interpose its equitable powers to reform a policy of insurance in any material respect must have as its basis, and must be preceded by, a meeting of the minds of the insurer and the insured as to the terms of the contract, the court's intervention being not for the purpose of changing or making a contract between the parties, but for the purpose of expounding the true terms and conditions of a contract, mutually agreed to and understood by the parties, but which, to some extent or in some material respect, have been erroneously or ambiguously expressed in the written instrument.

In the present case plaintiff plants herself upon the proposition that there was a meeting of the minds of the insured and insurer; that the intention was to simply renew the pre-existing insurance contract by the issuance of the new policy, identical with the first, save as to date and expiration of term. Defendant joins issue on this score, and says there was not a concurrence of minds as to the amount of the second policy in excess of its face amount, as written, and points to the policy as the best evidence of the correctness of its position.

In the early case of Davega v. Insurance Company, 7 La. Ann. 229, the right to have a policy of insurance reformed for mutual error or mistake, or error or mistake on one side and fraud on the other, was recognized. The earlier cases of Lippincott v. Ins. Co., 3 La. 546, 23 Am. Dec. 467, and Bell v. Western Marine & Fire Ins. Co., 5 Rob. 423, 39 Am. Dec. 542, touch the same question. Since these decisions, the question has been presented in many cases reaching the Supreme Court. We find no case, however, involving a demand to reform the contract by increasing the amount of liability of the insurer beyond and in excess of the face of the policy. The principle in the adjudicated cases we think the same as that in the case at bar.

In the recent case of Brodie v. Atlas Assurance Company, 158 La. 695, 104 So. 620, 622, Justice Thompson, as the organ of the court, discusses this question extensively, and correctly states the doctrine to be:

"It is well settled that, when a policy of insurance as issued does not conform to the contract which it purports to evidence, and the insured accepts the policy in the belief that it does conform to his contract, a court of equity will reform the instrument. Am. & Eng. Ency. of Law, vol. 16, p. 869.

"And a court of equity on a proper case shown will reform a written contract of insurance on the ground of accident, fraud, or mistake. Such mistake, among others, may be one in reference to the amount of insurance, the term and duration of the risk, the property or interest covered by the policy, or the name of the person insured and the ownership of the property, although reformation will be denied when the misstatement as to ownership was due to misrepresentation or concealment on the part of insured, even if he acted in good faith. Corpus Juris, vol. 26, p. 104.

"And the rule has been recognized and adopted in this state. Davega & Co. v. Crescent Ins. Co., 7 La. Ann. 228; Arguimbau v. Germania Ins. Co., 106 La. 148, 30 So. 148.

"In Gaudet v. North River Ins. Co., 156 La. 719, 101 So. 118, we said, quoting from syllabus:

"'An insurance policy, which is not in accord with the contract which it purports to evidence, will be reformed by equity so as to conform to parties' intention.'

"In order, however, to justify the reformation of an insurance contract there must have been either mutual mistake or mistake on one side and fraud on the other. The case under consideration comes within the ruling of the cited cases."

In that case the name of the insured was incorrectly placed in the policy.

In Corporation of Roman Catholic Church of Eunice v. Royal Ins. Co., 158 La. 601, 104 So. 383, a policy was reformed and corrected with regard to the identity of the property insured, and the same was done in Hayes v. Netherlands Ins. Co. of The Hague, 10 La. App. 612, 120 So. 218; and also in Geo. D. Geddes Undertaking & Embalming Company v. Home Accident Ins. Co., 172 La. 598, 134 So. 905.

In each of these cases the court found and held that before the policies of insurance issued, the insured and insurer had reached a perfect agreement and understanding as to the identity of the property to be insured, and that the policy did not fully reflect and contain the agreement which it purported to evidence.

In Pope-Gammill Lbr. Co. v. Zurich General Accident & Liability Ins. Co., 168 La. 422, 122 So. 278, it was held that a policy which erroneously stated the name of the insured should be reformed to meet the true facts and intentions of the parties.

In Hardin Bag Company v. Milwaukee Mechanics' Ins. Company, 160 La. 439, 107 So. 298, the court refused to reform a policy on the ground and for the reason that the in-

sured and defendant's agent did not arrive at an agreement as to the location and identity of the property sought to be insured. The syllabus in that case, in part, is as follows: "Where owner of bags stored in warehouse wishing insurance thereon was informed by agency that it would be necessary to have division number, and was misinformed by some one at warehouse as to division in which bags were stored, policy insuring them while in that division was not the result of meetings of minds to insure goods wherever stored, and could not be reformed accordingly."

In Crowell v. New Hampshire Fire Insurance Company, 147 So. 762, decided by this court on April 28th, this year (not yet reported [in State report]), the policy was reformed, after loss from fire, to the extent of substituting plaintiff's name therein instead of D. H. Strength's name, and permitting plaintiff to recover. In this case the decisions making up the jurisprudence of this state pertinent to the issues here discussed are practically all cited, and many of them quoted from. Decisions from other jurisdictions are also cited. Our own jurisprudence is in line with that of nearly all the other states. After all, whether reformation of the insurance policy is permissible depends upon the facts of each case, and, as stated before, and commented on in the cited cases, the entire matter harks back to the original understanding and agreement, verbal or otherwise, of the parties, or their agents, prior to the issuance of the policy. The policy, like any other written instrument, is simply the physical and tangible evidence of the relative obligations of the parties, arising from their previously adopted agreements. It purports to correctly contain what has been previously agreed to, but does not invariably do this.

In the present case no obligation devolved upon defendant's agent to renew, or issue anew, the insurance carried on plaintiff's property. He did so out of a desire to protect his and his principal's business, and to protect Hollins, his customer, in his mortgage rights against the property. Therefore, there being no obligation on defendant or its agent to issue a policy of insurance on the property at all, a fortiori was there no obligation on their part to maintain such insurance, if they consented to carry it, at the amount to which it had been increased in the first policy.

There being no duty on the part of defendant or its agent to carry this insurance for any amount, and the agent having issued and delivered to the mortgagee a policy for $150, without request or application from plaintiff or her mortgagee, and said agent being without intention or purpose to have issued the policy for any amount in excess of $150, makes it quite clear there was no mutual mistake concerning the amount for which the policy was intended to have issued. Defendant's agent appears to have been the only person who really had an intention in the matter. Hollins, the mortgagee, knew he only paid premium for $150 insurance, and accepted the policy under the belief it was for this amount only. Plaintiff did not interest herself about the insurance until after the fire and, with full knowledge of all the facts, made claim for only the face value of the second policy.

For the reasons assigned, the judgment of the lower court in favor of plaintiff is amended by reducing the amount thereof to $150; and in all other respects said judgment is annulled, avoided, and reversed. Defendant is cast for all costs.