306 So.2d 777 (1974)
BOARD OF TRUSTEES OF PHILLIPS MEMORIAL METHODIST CHURCH
v.
ST. LOUIS FIRE AND MARINE INSURANCE COMPANY et al.
No. 6578.
Court of Appeal of Louisiana, Fourth Circuit.
December 30, 1974.
Rehearing Denied February 13, 1975.
Jules J. Mumme, III, New Orleans, for plaintiff-appellant.
*778 Porteous, Toledano, Hainkel & Johnson, William A. Porteous, III, New Orleans, for defendants-appellees.
Before SAMUEL, GULOTTA and SCHOTT, JJ.
SCHOTT, Judge.
Plaintiff's suit for damages to its building at 3236 Burdette Street was brought against the drivers of two automobiles which collided on October 19, 1968, at the intersection of Forshey and Lowerline Streets, thereafter colliding with the plaintiff's building; against St. Louis Fire & Marine Insurance Co. and North River Insurance Co. of New York as the co-insurers of the building for fire and extended coverage insurance; and against Graci Insurance Agency, Inc. On a motion for summary judgment filed by St. Louis, plaintiff's suit against it was dismissed in December, 1970, and plaintiff did not appeal from that judgment. After trial on the merits plaintiff obtained a judgment against the two automobile drivers, but its claim against Graci and North River was dismissed. From that judgment plaintiff has appealed. Subsequent to the lodging of the appeal in this Court plaintiff's claim against North River was compromised and dismissed so that the only issue before this Court is the liability of Graci to plaintiff for $1433.95. Plaintiff also seeks penalties and attorney's fees under LSA-R.S. 22:658.
On May 4, 1966, St. Louis issued two policies of fire and extended coverage insurance on the buildings owned by plaintiff, a Church building at 3240 Burdette and an educational building at 3236 Burdette Street. The policies both had terms expiring on May 4, 1969. On June 24, 1968, St. Louis issued a notice of cancellation of the policy on the Church, sending a copy of the notice to plaintiff and one to Graci. A covering letter by St. Louis to Graci advised that the cancellation to be effective on July 1 was due to underwriting reasons.
In connection with the motion for summary judgment filed by St. Louis, depositions of one Mattie Brown and Reverend Slater, pastor of the plaintiff Church, were taken and it was established that in 1968 Mattie Brown, who resided next door to the Church, routinely received plaintiff's mail and her apparent signature was affixed to the Post Office receipt for registered mail accompanying the notice of cancellation sent by St. Louis to the Church on June 24. Mattie Brown and the pastor disclaimed any knowledge of the notice of cancellation, but the trial court in granting the motion for summary judgment in favor of St. Louis was evidently satisfied that the policy was effectively cancelled at that time.
Plaintiff's suit against Graci is predicated on its negligence in failing to provide coverage on the building and in failing to notify plaintiff of the cancellation until after the accident occurred in October.
Mrs. Janet Graci testified that upon receipt of the notice of cancellation from St. Louis she mailed on July 1, 1968, the following communication to a Mr. Augustine of Liberty General Insurance Agency:
"We received notice of cancellation and letter from the company to the effect that they cannot remain on this risk. Due to our inadequate facilities, we have no other company which will take this account.
"It seems that Churches, Schools, Restaurants and Lounges are almost impossible, at this time, to place. By carbon copy of this letter, we are notifying your client of our inability to be of further service to them through your agency."
The extent of her testimony as to the mailing of this notice to plaintiff was the following question and answer with respect to the above quoted document:
"Q. Does it show where a carbon copy was to go?
A. Phillips Memorial Methodist Church."
*779 The chairman of plaintiff Board, Harold Harris, who had charge of plaintiff's insurance problems at the time of these events testified that after the loss occurred in October and he began to process his claim for the damages to the building he learned for the first time that the policy had been cancelled. The documentary evidence shows that a written proof of loss was filed by plaintiff with Graci for damage to the education building under the policy written for the education building, but after an investigation by an adjuster it was determined that the damage was to the Church building and Harris was informed that the policy on the Church building had been cancelled so that there was no coverage for the damage.
The issue of Graci's responsibility to plaintiff requires a discussion of the history of the relationship between these parties beginning when the policy of insurance was first written in 1966. Graci was originally contacted by Augustine of the Liberty General Insurance Agency with a request that Graci place the insurance on the Church for Liberty. Graci did so with St. Louis, mailing the original policies to Liberty and establishing an account in the name of plaintiff showing Augustine to be plaintiff's agent. The first year's premium was received from Liberty and as of that time there is no doubt but that Graci had no direct relationship whatsoever with plaintiff. However, the agency's records show that on May 31, 1967, and June 12, 1968, Graci received directly from plaintiff installment premiums for the second and third policy years. Documents admitted into evidence also show that on March 13, 1968, Graci sent directly to the Church its invoice for the third installment, and on June 5 a "friendly reminder" was sent by Graci directly to the Church that the third installment premium had not yet been paid. On June 10 plaintiff sent directly to Graci the premium for the third year. In December, 1968, over three months after the loss, plaintiff received from Graci its check for the return premium covered by the following communication from Graci:
"I have just received word from the company regarding cancellation of the above policy, attached is copy of cancellation notice along with our check to cover the returned premium."
We are called upon to decide what if any obligation Graci had to plaintiff under these circumstances and whether Graci was negligent in fulfilling its obligation with the result that plaintiff suffered the loss claimed.
In Foster v. Nunmaker Discount Company, 201 So.2d 215 (La.App. 4th Cir. 1967), this Court held that an insurance agent was liable to its client for damages the client sustained in a fire where the policy of insurance had been cancelled, the agent had knowledge of the cancellation and opportunity to inform the client of the cancellation and had failed in its duty to so inform the client. The principles discussed in that case apply to the instant case provided that the relationship between Graci and plaintiff is the same as that between the agent and the client in the cited case, and it is this question which is crucial to a decision in this case. If Graci was agent for St. Louis alone then there would be no obligation on its part but if Graci had acquired the status of a broker under LSA-C.C. Art. 3016 and 3017 then it acquired the status of a fiduciary with corresponding obligations to its principal, the plaintiff. Furthermore, if Graci became an agent for the plaintiff it was responsible for its faults and neglect, if any, in handling the cancellation by St. Louis. C.C. Art. 3003, Kieran v. Commercial Union Insurance Company of New York, 271 So.2d 890 (La.App. 4th Cir. 1973).
From the facts and circumstances of this case we have concluded that Graci did become a broker and therefore an agent for the plaintiff as well as St. Louis *780 at some point in time after the original policy was written. While at the inception another agent was involved directly with plaintiff, by the time the third installment premium was due in May, 1968, this agent no longer had any dealings with plaintiff with respect to the policy involved in this case and indeed his only connection with the matter whatsoever was some residual commissions he was apparently receiving from Graci after Graci collected such premiums from plaintiff. In the final analysis there is no basis for holding that plaintiff had any agent other than Graci during 1968, and consequently Graci's actions must be evaluated in the light of its position as a broker and an agent for plaintiff.
Graci relies on Gary v. Blanchard, 228 So.2d 515 (La.App. 3rd Cir. 1969), Walters v. Edwards, 212 So.2d 749 (La.App. 1st Cir. 1968), Hanover Insurance Co. v. Orgeron, 206 So.2d 814 (La.App. 4th Cir. 1968) and Topps v. British Mercantile Ins. Co., 148 So. 470 (La.App. 2nd Cir. 1933) in support of its position that plaintiff had no right to rely on Graci but a reading of each of these cases reveals that they can all be distinguished on their facts. In none of them did an agent accept a premium for a full year of coverage and thereafter fail to inform the insured of the policy's cancellation by the company during the policy's term.
Plaintiff denies having received the original notice of cancellation from St. Louis as well as the copy of Graci's letter to Liberty. The summary judgment in favor of St. Louis would seem to finalize the question of whether the insurance company complied with the law and the policy provisions with respect to providing adequate notice of cancellation to plaintiff, but the company's obligations which are established by the law and the policy are not the same as Graci's obligations since Graci occupies a position of trust as a fiduciary on whom plaintiff was entitled to rely. Apparently, Graci itself recognized that it had some obligation to plaintiff over and above the notification which plaintiff had received from St. Louis when it intended to send to plaintiff the copy of the letter sent to Liberty on July 1. The question then becomes whether Graci produced sufficient evidence to show that it discharged its obligation to notify plaintiff that the policy had been cancelled. We have concluded that the evidence in this respect is insufficient for the reason that there is no showing whatsoever that a copy of the letter from Graci to Liberty was even mailed to plaintiff much less received by it.
Graci argues that the trial judge apparently disbelieved plaintiff's witness who claimed that they knew nothing about the cancellation until after the loss and much is made over the fact that, while the damage was done to the Church building, the proof of loss referred to the education building, demonstrating that plaintiff knew that the policy on the Church building had been cancelled and that they therefore made their claim under the other policy still in effect but on the education building. We have no reasons for judgment from the trial judge and we can only speculate as to the basis for his decision, but we hold that the proper disposition of this case rests upon the question of who had the burden of proof in the premises. Once it was established that Graci was a fiduciary the burden of proof was on it to show that it did in fact discharge its duty of informing plaintiff that the policy had been cancelled. Since there is no evidence that Graci performed this duty other than the statement by Mrs. Graci that her file copy shows that a carbon copy of the letter to Liberty was to have been sent to plaintiff, hardly constituting adequate proof of notice, plaintiff is entitled to recovery in the light of its sworn declaration that it had no knowledge that the policy had been cancelled until after the loss occurred.
There is no basis for plaintiff's claim for penalties and attorney's fees as the statute relied upon does not purport to make anyone other than insurers subject to its provisions.
*781 Accordingly, the judgment appealed from is reversed and there is judgment in favor of plaintiff, Board of Trustees of Phillips Memorial Methodist Church, and against Graci Insurance Agency, Inc. in the sum of $1433.95 with legal interest from date of judicial demand until paid, and for all costs of these proceedings including the cost of this appeal.
Reversed and rendered.