KLIEBERT, Judge.
Leaman & Reynolds, Inc., an insurance agency, the defendant, appeals from a judgment in favor of Michael Glenn, plaintiff, in the amount of $2,668.71. After plaintiff’s motorcycle was stolen, he sued the insurance agency for its value. The suit was grounded in the insurance agency’s alleged failure to notify plaintiff of the bankruptcy of American Reserve Insurance Company (hereafter Reserve), the insurer of the motorcycle, under a policy covering loss by theft, obtained by defendant for the plaintiff. The primary issue on appeal is whether the insurance agency had a fiduciary relationship with plaintiff and, if so, did it give the plaintiff sufficient notice of the insolvency of the insurer. In the event of an affirmation of the trial judge’s ruling on notice, the defendant alternatively argues for reduction of the judgment. Defendant asks that the judgment be reduced by the amount of the deductible in the policy and/or by reduction in the value of the motorcycle. We amend the judgment and, as amended, affirm.
Plaintiff went to defendant’s office to obtain insurance coverage on his motorcycle. When the insurance agency was unable to obtain coverage through any of the companies with which it did business, it obtained from Gem Underwriters, Inc. (hereafter Gem), a general agency, a policy issued by Reserve. The policy afforded coverage of loss from theft for the period February 12, 1979 to February 12, 1980. The plaintiff paid defendant the premium due on the policy. In turn, it withheld its commission and forwarded the balance to Gem.
The application for insurance forms, signed by the plaintiff, were supplied by Gem. It reflected plaintiff’s name, address and his phone numbers at home and at work. Defendant maintained a copy of this application in its file. On or about April 15, 1979, plaintiff moved from 128 Midway Drive, River Ridge, La. (the address reflected on the application form and on the insurance policy) to 3201 Rue Parc Fon-taine, Algiers, La. He neither informed the U.S. Postal authorities nor the defendant of his change of address.
On May 29, 1979, Reserve was declared insolvent by an Illinois Court. Since Reserve was an admitted Louisiana company, under our law the Louisiana Guarantee Association was obligated to guarantee substantially all claims and unearned premiums and to continue the policy coverage for an additional thirty days from the time the insurance carrier was judicially declared insolvent. LSA-R.S. 22:1382. Thus, in this instance, the coverage guaranteed by Reserve expired on June 28, 1979.
Sometime in June, an employee of Gem informed the defendant of Reserve’s insolvency. Under date of July 5, 1979, defendant mailed a letter, directed to the plaintiff at the address indicated in the policy, i.e., 128 Midway Drive, River Ridge, La. The letter referred to a previous letter (allegedly sent by Gem) informing plaintiff of the insolvency of Reserve. The intent of defendant’s letter was to inform plaintiff as to the procedure he was to follow in obtaining a refund of his unearned premium and of a means to obtain replacement coverage. The letter was tickled in a “diary system” and when no response was received in thirty days, plaintiff’s insurance file was re *1226 moved from the active files, marked “dead”, and filed with the inactive files. The plaintiff testified he did not receive the letter and had no notice of Reserve’s insolvency. The record is not clear as to what happened to the unearned premium plaintiff would have been entitled to receive.
On November 19, 1979, plaintiff’s motorcycle was stolen. He contacted the defendant to file a claim for his loss and was informed at that time he no longer had coverage because his insurer was insolvent. This suit followed.
The trial judge concluded the defendant was an independent broker within the meaning of La.C.C. arts. 3016 and 3017. We concur in that conclusion because the defendant was not under any exclusive contract with any insurer, had no agency relationship with Reserve, and acted as the agent of the plaintiff to canvass the field for insurance coverage for him and to receive his premium for coverage so obtained. Thus, defendant was in a similar position to the agents involved in Britten v. Payne, 381 So.2d 855 (1st Cir.1980); Board of Trustees, etc. v. St. Louis Fire & Mar. Ins. Co., 306 So.2d 777 (4th Cir.1974); i.e., they occupied the position of a fiduciary to the plaintiff.
As a fiduciary, the defendant had the burden of showing it discharged its fiduciary duty to the plaintiff. Board of Trustees, etc. v. St Louis Fire & Mar. Ins. Co., supra. Here the defendant relied on the fact it mailed a letter to the plaintiff at his last reported address. Hence, the defendant argues if it was not received by plaintiff, it was plaintiff’s failure to inform the defendant, Gem or the U.S. Postal authorities of his change in address which caused the failure of delivery. Since the letter was not returned to them undelivered, defendant argues it was justified in assuming the letter was delivered.
However, the rulings of the Louisiana courts are clear. When the general principles of the fiduciary relationship are applied to an independent broker who has obtained the insurance coverage and received the premium therefor, the independent broker has an affirmative duty to inform the client of a premature termination of the coverage. Foster v. Nunmaker Discount Company, 201 So.2d 215 (4th Cir.1967); Britten v. Payne, supra; Board of Trustees, etc. v. St. Louis Fire & Mar. Ins. Co., supra. This duty stems from the client’s reposing his trust in the independent broker as his agent, thus requiring the broker to preserve the welfare of its client. The defendant’s duty here was not only to inform the plaintiff of the insolvency of Reserve, but also to protect and safeguard the unearned premium he was entitled to receive.
The defendant did not fulfill its obligation to the plaintiff. It mailed only one unregistered letter to the last known address of its client. According to its own witness, the letter was sent as a “courtesy” and not out of any course of action designed to notify the client of the insolvency of Reserve and the procedure to be followed in obtaining a refund of his unearned premium. When no response was received from the letter and the letter was not returned by the postal authorities, the defendant could not merely assume it had been delivered and its duty to its client met. Rather, it was obligated to make some further inquiry as to why the affirmative response called for in the letter had not been received. Its file contained information which would have placed it in contact with the plaintiff. The failure to make such further inquiries was a breach of the duty owed to its client.
The duty of the independent broker to its client is independent of the duty of the insurance carrier to its policy holder. The insurance carrier’s duties arise out of the insurance contract and the provisions of the Louisiana Insurance Code, especially LSA-R.S. art. 22:636; whereas, the duty of the independent broker arises out of its fiduciary relationship to its client. This distinction was vividly made in Board of Trustees, etc. v. St. Louis Fire & Mar. Ins. Co., supra. There the insurance carrier was absolved of liability because it fol *1227 lowed the prescribed procedure to give its policyholder timely notice of cancellation; however, the independent broker was held liable to its client for breach of its fiduciary duty because the client did not receive actual notice of the cancellation.
In Hernandez v. State Farm Mut. Auto. Ins. Co., 410 So.2d 348 (4th Cir.1982), the issue before the court was the effectiveness of the action taken by the insurance carrier towards the cancellation of the insurance policy, not the duty owed by a fiduciary to its client. Hence, the case is not applicable here.
The next question involves the extent of the defendant’s liability for the breach. The trial judge awarded $2,668.71 to the plaintiff. This was apparently computed by adding $173.71 for new tires installed on the motorcycle shortly before the theft to $2,495.00 (the value of the motorcycle as testified to by plaintiff’s expert witness). The defendant argues, adding the $173.71 to the value of the motorcycle results in a duplication of the award. Further, he argues the $250.00 deductible provided for in the policy should have been deducted from the established value. We agree with both arguments.
Adding the cost of the tires to the value of the motorcycle (the $2,495.00 was with tires and in excess of the motorcycle’s blue book value) does amount to a duplication because tires are already included in the base value of $2,495.00. Additionally, plaintiff is entitled to recover from his fiduciary only what he lost because of the breach. Foster v. Nunmaker, supra. Had the policy been in effect, plaintiff would have recovered the actual cash value less the $250.00 deductible provided for in the policy. Accordingly, the judgment of the trial judge is amended to be a monetary award of $2,245.00 in lieu of $2,668.71 and, as amended, is affirmed. Cost of the appeal to be borne by the appellant.
AMENDED AND, AS AMENDED, AFFIRMED.