527 So.2d 403 (1988)
Ronald C. DURHAM
v.
McFARLAND, GAY AND CLAY, INC.
No. 88-CA-0020.
Court of Appeal of Louisiana, Fourth Circuit.
June 7, 1988.
*404 Carl W. Cleveland, Cleveland, Barrios, Kingsdorf & Casteix, New Orleans, for plaintiff/appellee.
Stephen M. Bernstein, O'Keefe, O'Keefe and Bernstein, New Orleans, for defendant/appellant.
Before BYRNES, CIACCIO and LOBRANO, JJ.
LOBRANO, Judge.
This appeal arises from a judgment in favor of plaintiff, Ronald C. Durham (Durham) and against defendant, McFarland, Gay and Clay (Clay) for damages in the amount of $20,452.81 as a result of Clay's failure to procure flood insurance coverage on Durham's Breakwater Drive residence which was damaged in Hurricane Juan.
The trial court, in a well reasoned judgment, concluded that Clay failed to properly advise Durham on the need to secure flood insurance; that Clay failed to procure said coverage; that Clay failed to exercise due diligence in not specifically discussing flood protection on the new residence; that Clay failed to notify Durham of the absence of flood protection and that Clay failed to implement a system whereby he would be alerted that Durham had not received pertinent correspondence regarding his insurance coverage.
Clay appeals the judgment of the trial court asserting the following assignments of error:
1. The trial court erred in failing to apply the jurisprudential test annunciated in Karam v. St. Paul Fire and Marine Insurance Company, 281 So.2d 728 (La.1973).
2. The trial court erred in finding that the same standard applied to an insurance broker as to an attorney from whom advice is sought.
3. The trial court erred in finding that defendant failed to exercise the proper degree of skill and judgment in failing to discuss with the plaintiff in December 1984, the issue of flood protection for the Breakwater address and subsequently failed to follow up and correct this defect by failing to notify the plaintiff in May, 1985.
4. The trial court erred in finding that Durham did not receive the letter dated May 20, 1985.
5. The trial court erred in finding that it was incumbent upon the defendant to have a proper suspensive system similar *405 to that used by attorneys to protect themselves from letting lawsuits prescribe.
6. The trial court erred in failing to find that there was no undertaking or agreement on the part of defendant to procure flood insurance coverage for the Breakwater Drive address.
7. The trial court erred in failing to find that the actions of defendant/appellant did not warrant an assumption by plaintiff that his Breakwater Drive residence was properly insured against flood damage.
ERRORS 1 AND 2:
Clay argues the trial court improperly applied the test enunciated in Karam v. St. Paul Fire and Marine Ins. Co., 281 So.2d 728 (La.1973). In Karam, our Supreme Court held that:
"An insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the insurance requested and to notify the client promptly if he has failed to obtain the requested insurance. The client may recover from the agent the loss he sustains as a result of the agent's failure to procure the desired coverage if the actions of the agent warranted an assumption of the client that he was properly insured in the amount of the desired coverage." Karam, supra at 730 and 731.

Specifically Clay asserts the trial court erred in analogizing the fiduciary duty of an insurance agent to his client with that of an attorney to his client.
While we agree that the analogy to an attorney-client relationship is questionable, we do not give such a strict interpretation to Karam as Clay suggests.
Clay was acting as Durham's broker and thus is responsible for any fault or neglect while performing in that capacity. La.C.C. Art. 3002, 3017 and 3018. The jurisprudence has recognized that a broker's fiduciary duty includes advising his client with regards to recommended coverage, to investigate and ascertain the financial condition of prospective companies, and to notify the insured of cancellation or termination of coverage. Foster v. Nunmaker, 201 So.2d 215 (La.App. 4th Cir.1967); Foster v. American Deposit Insurance Co., 435 So.2d 571 (La.App. 3rd Cir.1983); Britten v. Payne, 381 So.2d 855 (La.App. 1st Cir.1980), writ refused, 384 So.2d 800 (La.1980); Bordelon v. Herculean Risks, Inc., 241 So.2d 766 (La.App. 3rd Cir.1970). We conclude that the Karam decision does not relegate the insurance broker to a mere "order taker". That case sets out the broker's duties when there is an admitted request for insurance, but is not an exclusive recitation of a broker's duties to his client.
ERRORS 3, 4, 5, 6 AND 7:
In the trial court's reasons for judgment, the following conclusions are made:
"... the Court finds that the defendant is liable ... as a result of the failure to have properly advised him [Durham] of the need to secure flood insurance as well as the actual obtaining of the flood insurance absent competent evidence or corroborating documents that the plaintiff was advised and made the decision not to obtain it." (footnote omitted)
Our review of the record supports the trial court's conclusions. Only Durham and Clay testified at trial. The credibility of witnesses is for the trier of fact to determine. Green v. Coca Cola Bottling Co. Ltd., 477 So.2d 904 (La.App. 4th Cir. 1985). Substantial weight must be given to the trial court's findings of fact and these should not be disturbed on appeal in the absence of clear and manifest error. Garrett v. Celino, 489 So.2d 335 (La.App. 4th Cir.1986).
DURHAM'S TESTIMONY:
Durham testified that in 1984 he purchased a boathouse on Lake Pontchartrain located at 8024 Breakwater Drive. At the time he purchased the boathouse he was residing at 660 Robert E. Lee Blvd. His intention was to renovate the boathouse, dation the Robert E. Lee property back to Dryades Homestead and move permanently into the boathouse. His insurance agent at *406 that time was Gordon E. Clay of McFarland, Gay and Clay, Inc. He had handled the majority of insurance needs through Clay for the prior 10 to 15 years.
In December of 1984, while he was still living on Robert E. Lee, a meeting was held with Clay to discuss his insurance needs and coverages on both the Robert E. Lee and Breakwater Drive properties. As of this date, Durham carried both a home owners and flood protection policy on the Robert E. Lee residence. Durham testified that he requested Clay to transfer "all coverage" from the Robert E. Lee property to the Breakwater Drive property leaving only a fire protection policy on the Robert E. Lee residence. Although he admits not specifically mentioning each type of coverage separately he emphatically stated that he did request the same coverage be transferred to the boathouse.
Durham moved into the boathouse in February of 1985. Durham testified that he never received any letter of termination or renewal or any notice by Clay that he lacked flood protection on the boathouse. He stated that he was not made aware that he had no flood insurance on the boathouse until after Hurricane Juan in October of 1985 when he attempted to file a damage claim. He testified that he and Clay discussed on several occasions the fact that he had requested flood coverage and that Clay assured him that he had requested the coverage but for some reason the policy was not transferred.
CLAY'S TESTIMONY:
Clay's testimony contradicts that of Durham. He stated that Durham never requested the same coverage be transferred to the Breakwater Drive property and stated that he would not have automatically transferred the flood policy unless Durham specifically requested it because the mortgage holder on the Breakwater residence was a private individual, whereas the Robert E. Lee mortgage holder was a homestead. Clay's actions however, contradict his assertions that there was never a request to transfer the flood policy. Shortly after the December, 1984 meeting, he sent Durham a letter in which he stated "I think we have touched all the bases." When asked on cross examination why he did not discuss the flood policy with Durham at the meeting, he responded, "Because I didn't think of it, ...." Furthermore, when Clay received notification on May 13, 1985 that the flood policy on Robert E. Lee had expired on April 27, 1985, he reviewed Durham's file and expressed surprise there was no flood insurance on the Breakwater residence. And, when questioned on cross examination as to why he did not cancel the flood insurance on the Robert E. Lee property as requested by Durham but rather allowed it to expire two months after Durham vacated the premises, his response was, "Not good business practice."
Clay testified he realized that Durham had no flood protection on the Breakwater residence when he received the May 13th cancellation notice of the flood policy on Robert E. Lee. He immediately attempted to reach Durham by telephone, but was unsuccessful. He then instructed his secretary, Terri Henry, to send Durham a memo informing him of the lack of coverage and requesting he call if he wanted flood coverage. Although he stated he directed his secretary to mail this memo to the Breakwater address he admitted that neither this letter nor any other correspondence sent to Durham was by certified mail. In addition, the file copy of the memo is unclear as to which address the original was allegedly mailed. Clay admitted that the same secretary responsible for sending the memo was also responsible for improperly handling Durham's notice of termination by failing to place it in a tickler/reminder file for follow up. He admits had this been correctly done, he would have been able to follow up on his contact with Durham, and most probably the flood policy would have been secured.
Thus, the facts clearly show that Clay handled Durham's insurance needs for at least 10 to 15 years prior to this incident, and that he had handled the insurance on the Robert E. Lee property. Durham requested Clay to handle the insurance needs of the Breakwater residence. Although the evidence is conflicting whether there *407 was a specific request to provide flood insurance, it is clear that Durham requested a transfer of the Robert E. Lee coverage to the Breakwater residence. It is also clear that Clay became aware that Durham had no flood insurance on the Breakwater residence several months before the flood, and had it not been for the improper internal handling of Durham's notice, he would have followed up on his contact. More probably than not, the flood policy would have been secured.
Given the facts and circumstances of this case, and even absent a specific finding that Durham requested flood insurance, we hold that the evidence supports a finding of fault on Clay's part.
We distinguish Porter v. Utica Mutual Insurance Co., 357 So.2d 1234 (La.App. 2nd Cir.1978), and Redmond v. National Union Fire Insurance Co., 403 So.2d 810 (La.App. 2nd Cir.1981) relied on by Clay.
The court in Porter found as a fact that the plaintiff failed to communicate any request for insurance to the agent. There were no discussions concerning the amount of insurance, type of policy, premium amounts, etc. In the instant case, Clay was aware of the residence move by Durham, and in fact met with him to discuss insurance coverage. He admits that he didn't discuss flood insurance because "he didn't think of it". He also admits surprise at learning there was no flood insurance.
In Redmond, the plaintiff's policy terminated because of non-payment of premium. He argued that he had a phone conversation with "someone" at the defendant-agency and thus felt sure he was insured. The court found that "[p]laintiff could not identify the person he talked to, did not discuss premium payments, and did not know for a fact that the person with whom he was talking had any knowledge whatsoever of the letter." Id. at 812. Those facts are clearly distinguishable from the instant case.
We therefore affirm the trial court's conclusion that Clay breached his duty to Durham to advise of the needed flood protection, and his failure to obtain it absent competent evidence that Durham made the decision not to obtain it.
AFFIRMED.