GUIDRY, Chief Judge.
Plaintiff, Kinder Mortgage and Loan, Inc. (Kinder), appeals a judgment of the trial court denying its petition for judgment on two promissory notes and granting defendants-plaintiffs-in-reeonvention’s prayer for set off in the amount sued for by Kinder. We affirm.

FACTS

Defendants, Gus Celestine, Jr. and Madeline Celestine, made a number of loans with Kinder over a period of years. On August 9, 1989, they executed a collateral mortgage and collateral mortgage note for $20,000 secured by certain real estate in Allen Parish. That same day, they executed a hand note for $2,169.01 at 34.28% interest for a total of $3,477.32. That loan included $164.41 for credit life insurance on Gus Celestine. Thereafter, on August 23, 1989, the Celes-tines executed a second hand note for $8,070.86 at 26.98% interest for a total of $17,637.00. The second note also included a premium of $886.26 for credit life insurance on Gus Celestine. Both credit life insurance policies were provided by Kinder through Fidelity Life Insurance Company (Fidelity).
Gus Celestine died unexpectedly on August 17, 1991. Kinder was unable to collect on the credit life policies on Celestine as Fidelity had been placed in rehabilitation in July 1991 and was subsequently placed in liquidation on November 22, 1991. Thereafter, Kinder filed this suit seeking to seize and sell the property pledged to secure the notes by the Celestines. Mrs. Celestine, individually, and as the representative of the estate of Gus Celestine, Jr., answered Kinder’s petition and filed a reconventional demand alleging that Kinder breached its fiduciary duty to the Celestines to provide adequate insurance protection and, as a result, should be held liable to them for all damages sustained.
*528 The following facts were adduced at trial. In each instance when the Celestines had dealt with Kinder, Kinder had encouraged the Celestines to purchase credit life insurance. Celestine purchased the offered insurance on each occasion. Prior to 1989, the insurance had been provided either through Kinder’s own life insurance company or Ocean Insurance Agency, which had at least one shareholder in common with Kinder.
Sometime prior to August 1989, Kinder decided to offer credit life insurance exclusively through Fidelity. Kinder could not bind Fidelity, who could reject any applicant and Kinder was free to change life insurance companies at will. When questioned concerning the investigation of Fidelity which Kinder undertook before deciding to use Fidelity, Steve Grant, who was both vice president of Kinder and its parent company, Morgan Financial Services, replied:
Well, of course, these guys, they call on you and they offer you different commissions and what they can do for you. And some of them even go so far as to print your loan forms. That’s kind of an extra thing to try to get you to do business with them. We’ve always just tried to write with whoever was reputable at the time. Fidelity was with several banks and several bankers that I knew and several finance companies and they had always been solid and sound and I had never heard anything bad about them. So that’s who we was [sic] using. And I had never had any problem with them until this time.
When pressed as to why Fidelity was chosen over other companies, Grant admitted “... of course a lot of it had to do with the commissions and who was paying what and then a lot of it had to do with the price that you could put on your customer or your insurance”. Finally, when asked if he checked into Fidelity’s financial status before he started doing business with them, Grant answered: “No, sir. If they’re licensed in the state and they’re doing business in the State of Louisiana, the Insurance Commissioner’s office polices that. I don’t police their health”. While claiming that he was “sure that ... I did”, Grant couldn’t specifically recall checking Fidelity’s rating with the Insurance Commissioner, nor could he remember what Fidelity was rated.
Grant first claimed to have no knowledge of Fidelity’s financial problems until he received the Insurance Commissioner’s letter of November 25, 1991 informing him that Fidelity had been placed in liquidation as of November 22, 1991. However, when confronted with a letter he sent to Celestine on August 22, 1991, just five days after her husband’s death, which stated that Fidelity had been placed into rehabilitation on July 22, 1991, he admitted he must have known of Fidelity’s problems before that date. The' record reflects that, although advised of Fidelity being placed in rehabilitation in July 1991, Kinder made no effort to notify its customers of this fact.
Defendants contend that Kinder’s failure to investigate Fidelity’s financial stability and Kinder’s failure to notify its customers that Fidelity had been placed in rehabilitation breached fiduciary duties Kinder owed to its customers and that the breach of its fiduciary duty damaged the Celestines to the same extent as the amount owed to Kinder. The trial court so held stating:
... [T]he failure of Kinder Mortgage to notify the Celestines that Fidelity was having financial troubles deprived them of the opportunity to go out and purchase other life insurance. Gus Celestine died suddenly on August 17, 1991 and at the time of his death both he and his wife believed they had insurance protection to cover their loan.

LAW

We find Kinder’s failure to notify its customers of Fidelity being placed in rehabilitation a breach of fiduciary duty sufficient to sustain the outcome reached by the trial judge.
Appellant argues that it breached no duty to the Celestines in that it was not the guarantor of the solvency of Fidelity. Kinder relies on Gulfco Finance Company v. King, 552 So.2d 1199 (La.1989), wherein the court stated:
In obtaining and financing a property insurance policy for a mortgagor, a mort *529 gagee does not guarantee that the insurance company will be financially able to pay claims when filed. This point of law has long been settled in other jurisdictions. Master Plumbers Limited Mutual Liability Co. v. Cormany & Bird, Inc., 79 Wis.2d 308, 255 N.W.2d 533 (Wis.1977); Winans v. Manning, [62 Kan. 865], 61 P. 393 (Kan. 1900); Gettins v. Scudder, 71 Ill. 86 (1873); Southern Building & Loan Association v. Miller, 110 F. 35 (4th Cir.1901). The trial court was correct in noting that the insurance on the mortgaged property was for the benefit of both mortgagee and mortgagor. The Kings were entitled to rely on Gulfco to exercise due care in selecting a good and solvent insurance company. There is, however, no evidence indicating lack of due care on the part of Gulfco. The trial court recognized that Gulfco had no reason to suspect that Texas Fire and Casualty would become insolvent. The policy obtained by Gulfco was adequate in its terms. Cf. Karam v. St. Paul Fire & Marine Insurance Co., 281 So.2d 728 (La. 1973) (wrong amount of policy); Citizen Finance Co. of Amite v. Buchanan, 261 La. 1022, 261 So.2d 652 (1972) (wrong party named in policy). The bare fact of the insurer’s insolvency does not show fault or neglect in obtaining adequate insur-ance_ (Emphasis ours) Id. at 1200.
We find Gulfco, supra, clearly distinguishable from the case at bar. In the instant ease, Kinder was notified by the Insurance Commissioner in July 1991 that, because of financial difficulties, Fidelity was being placed in rehabilitation, i.e., Kinder had reason to suspect Fidelity would become insolvent. Yet, it did nothing. It did not notify its customers, nor did it attempt to find suitable replacement coverage for its customers.
The trial court found Kinder to be an insurance broker. We agree. La.R.S. 22:1162 defines “broker” as follows:
An “insurance broker” is hereby defined to be an individual, partnership, or corporation who or which shall, for a commission or brokerage consideration, act for or aid in any manner in negotiating contracts of insurance, or in placing risks or soliciting or effecting insurance as agent for an insured or prospective insured other than himself or itself, and not as a licensed agent of an insurer, and not as an insurance solicitor employed by a licensed agent. The broker is deemed for all purposes to be the representative of the insured. (Emphasis ours)
In Karam v. St. Paul Fire and Marine Insurance Co., 281 So.2d 728 (La.1973), the Louisiana Supreme Court stated:
An insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the insurance requested and to notify the client promptly if he has failed to obtain the requested ■ insurance. The client may recover from the agent the loss he sustains as a result of the agent’s failure to procure the desired coverage if the actions of the agent warranted an assumption by the client that he was properly insured in the amount of the desired coverage.
In Glenn v. Leaman and Reynolds, Inc., 442 So.2d 1224 (La.App. 5th Cir.1983), a panel of the Fifth Circuit explained:
... [T]he rulings of the Louisiana courts are clear. When the general principles of the fiduciary relationship are applied to an independent broker who has obtained the insurance coverage and received the premium therefor, the independent broker has an affirmative duty to inform the client of a premature termination of the coverage. Foster v. Nunmaker Discount Company, 201 So.2d 215 (4th Cir.1967); Britten v. Payne, [381 So.2d 855], [1st Cir.1980] supra; Board of Trustees, etc. v. St. Louis Fire & Mar. Ins. Co., [306 So.2d 777 (4th Cir.1974)] supra. This duty stems from the client’s reposing his trust in the independent broker as his agent, thus requiring the broker to preserve the welfare of its client. The defendant’s duty here was not only to inform the plaintiff of the insolvency of Reserve, but also to protect and safeguard the unearned premium he was entitled to receive.... [T]he duty of the independent broker arises out of its fiduciary relationship to its client. (Emphasis ours)
And, in Gulf Coast Building Systems, Inc. v. United American Surety Company, Ltd., 614 So.2d 1360 (La.App. 3rd Cir.1993), writs *530 denied, 617 So.2d 933, 934 (La.1993), this court pointed out:
The jurisprudence has recognized that a broker’s fiduciary duty includes advising his client with regards to recommended coverage, investigating and ascertaining the financial condition of prospective companies, and notifying the insured of cancellation or termination of coverage. The insurance broker is not a mere “order taker.” See Durham v. McFarland, Gay and Clay, Inc., 527 So.2d 403 (La.App. 4th Cir.1988), and cases cited therein; and Naulty v. OUPAC, Inc., 448 So.2d 1322 (La.App. 5th Cir.1984).
Although the Celestines’ coverage was not terminated by Fidelity being placed in “rehabilitation” in July of 1991, that fact put Kinder on notice that Fidelity was in deep financial difficulty. Thus, in order “to preserve the welfare of its client”, Kinder should have, at the very least, passed this information on to its clients who were insured through Fidelity in order that they might secure substitute coverage if they deemed it necessary. Kinder’s failure to so notify the Celestines breached a fiduciary duty owed to them and entitles reconvenors to the recovery allowed by the trial court.
For the reasons stated, the judgment of the trial court is affirmed. All costs of this appeal are taxed against Kinder Mortgage and Loan, Inc.
AFFIRMED.