749 So.2d 798 (1999)
ZINSEL COMPANY, INC.
v.
J. EVERETT EAVES, INC.
No. 99-CA-691.
Court of Appeal of Louisiana, Fifth Circuit.
November 30, 1999.
H. Sloan McCloskey, New Orleans, LA, for Plaintiff-Appellant.
Margaret E. Bradley, Metairie, LA, for Defendant-Appellee.
(Panel composed of Judges EDWARD A. DUFRESNE, Jr., SOL GOTHARD and SUSAN M. CHEHARDY),
DUFRESNE, Judge.
This is an appeal by Zinsel Company, Inc., plaintiff-appellant, from a judgment dismissing its claim against J. Everett Eaves, Inc., an insurance agency, for the agency's allegedly negligent failure to notify Zinsel of the availability of increased flood insurance, thus indirectly causing a $300,000 underinsured loss during the May 8, 1995, flood. The trial judge determined that there was no showing of any undertaking by the agency to see to it that Zinsel always had the maximum available flood insurance, and thus that its failure to notify Zinsel of an increase in available limits of this coverage was not a breach of any duty owed to this client. He therefore entered judgment in favor of Eaves. For the following reasons we affirm that judgment.
The following facts are generally undisputed. Eaves was Zinsel's exclusive insurance agency from the 1960's until the end of 1992. Because of problems encountered by Zinsel in the workers' compensation insurance area, the renewal premium for that coverage in the 1993 Eaves proposal was considerably higher than that of the year before. Zinsel contacted the Rosenthal Agency and decided to place all of its insurance business with that firm because of better rates, and did so as of January 1, 1993. However, because its flood insurance *799 policy did not expire until mid-year, Zinsel left that policy with Eaves.
The flood policy was actually provided by the national flood insurance program, but was handled through the Omaha Property and Casualty Company. When this insurance first became available in the 1970's, the maximum limits available to businesses were $100,000 for buildings and $100,000 for contents, and this was the coverage selected by Zinsel. Sometime in the 1980's, these limits were raised by Congress to $200,000 for buildings and $200,000 for contents, and Zinsel again purchased the maximum amount available. This was the policy in effect when Zinsel moved its business to Rosenthal in 1993. Then, in late 1994, Congress again raised the limits of flood coverage, effective March 1, 1995, to $500,000 buildings/$500,000 contents.
In response to this change, Omaha sent out a mailing on January 18, 1995, to all of its insureds who were carrying the then maximum flood insurance advising them of the increase in limits which would be available as of March 1. It also sent a list of the insureds to whom it had mailed this notice to their respective agencies. Eaves received their list, which included Zinsel. Eaves discussed this matter in house and a decision was made to rely on the Omaha letter to the insureds as being sufficient notice of the increased maximums. It was further decided, however, that Eaves would bring this matter up with its clients on the renewal anniversary of their policies (July in Zinsel's case) if they had not chosen to raise their limits by then. Zinsel did not dispute that the Omaha notice was sent to it, but asserted that it either did not receive it or inadvertently threw it away as junk mail.
After the flood, the insurance adjuster who was working up the Zinsel claim apparently asked Mark Rusck, Zinsel's comptroller, why it didn't have the $500, 000/$500,000 available coverage. Rusck immediately went to Eaves to inquire about why Zinsel had not been informed about the new limits and spoke to John Beckman, the agent handling the Zinsel account. Beckman showed him the Omaha notice, but Rusck testified that that was the first time he had seen the document. Zinsel suffered a $300,000 underinsured loss in the May flood, all of which would have been fully covered had it raised its flood insurance to the newly available maximum in March.
Zinsel sued Eaves alleging that it had breached its duty to a client in not making sure that Zinsel was aware of the increased flood limits and given an opportunity to purchase this extra coverage. It also alleged that Eaves was derelict in not informing it of the availability of "difference in conditions" or DIC insurance, a type of excess coverage available for amounts above the generally available limits for particular risks. Finally, it alleged that Eaves failed to inform it that the flood insurance which it did have was "site specific" in that it only applied to Zinsel's main L & A Road facility, and not to its smaller Lafayette Street operation.
After a bench trial on the merits, the trial judge ruled in favor of Eaves, dismissing the matter with prejudice. In his reasons for judgment he noted that there was no evidence to show that Eaves had ever undertaken to make sure that Zinsel always had the maximum available flood insurance. Neither did he find any evidence to establish that anyone from Zinsel had ever told any Eaves agent that it expected Eaves to always provide it with maximum available coverage. He also noted that the Omaha notice was deemed sufficient by the Eaves Agency to alert its insureds to the raised coverages, and that two agents from two other agencies similar size and scope to Eaves testified that they too had relied on the Omaha notice as adequate. He finally pointed out that even plaintiff's insurance expert, Dr. Robert Felton, testified that reliance on the Omaha notice was the agency's call to make and if it decided to so rely that would be "okay in his mind."
*800 Zinsel now appeals that judgment and urges that the trial judge erred in 1) finding that Eaves had not breached its fiduciary duty to Zinsel and 2) construing Dr. Felton's testimony as meaning that it was proper for Eaves to rely on the Omaha notice. It also asserts that the breach of fiduciary duty was shown in regard to Eaves failing to notify it of the increase in available flood limits, in failing to advise it to procure DIC insurance, and in failing to inform it that its existing flood coverage was site specific.
Taking these matters in reverse order, we first note that the argument about "site specific" coverage has no basis in fact. Mark Rusck, Zinsel's comptroller, testified that there was no damage at the Lafayette Street facility, and thus whether Zinsel believed that site to be covered or not is irrelevant.
As to the DIC coverage, the testimony was more complex, but the result is the same. Leslie Jacobs of the Rosenthal Agency explained that DIC insurance is not flood specific, but is rather a type of excess policy which insures risks for which other coverage is not available. In the context of flood insurance, she said that the major problem is business interruption because the standard available flood policy does not cover this item. She also said that DIC could also cover excess flood property damage, but that it would only pick up the loss after the maximum available coverage was exhausted. If an insured had only $200,000/$200,000 flood coverage after the limits had been raised to $500,000/$500,000, then DIC coverage would only be available above these latter figures. Plaintiff expert, Dr. Felton, basically agreed with this explanation.
In the present case, the damages enumerated by Zinsel in its petition did not involve any business interruption loss. According to Jacobs, had it had in effect a DIC policy for excess property flood damage on May 8, 1995, that policy would not have paid until the $500,000/$500,000 underlying available limits had been exhausted. Because these limits would have been sufficient to cover the loss at issue here, the DIC policy would never have come into play. It is thus irrelevant whether Eaves advised Zinsel of this available coverage or not.
The final questions here are whether Eaves had a duty to see to it that Zinsel always had the maximum available flood insurance, and if so, whether it breached that duty in not directly advising Zinsel of the increase in available limits, but instead relied on the Omaha notice to accomplish this goal. The law as to insurance agents' obligations to its clients was well summarized in Durham v. McFarland, Gay and Clay, Inc., 527 So.2d 403 (La.App. 4th Cir. 1988). There, the court recited the general rule of Karam v. St. Paul Fire and Marine Ins. Co., 281 So.2d 728 (La.1973) that an agent may be liable to a client for not placing coverage where he undertakes to procure coverage, fails to diligently do so or notify the client that he has not, and thus warrants an assumption on the part of the client that the coverage was obtained. It then noted that Karam was not an exclusive recitation of the duties of an insurance agency, and that other cases had recognized, among other things, that the agency's fiduciary duty included advising a client of recommended coverages.
Here, although the trial judge enunciated the simplified test of Karam, supra, and found that there was simply no undertaking to procure maximum flood coverage, his entire analysis of the facts shows that he was also mindful of the agency's duty to keep its client abreast of pertinent changes in available flood insurance. Specifically, he addressed the question of the adequacy of the notice given to the client by Omaha and the decision by Eaves to rely on that notice. His factual findings were that the Omaha notice was adequate, and that the decision by Eaves to rely on that notice to fulfill its duty to Zinsel was proper. These being factual determinations, the standard of review here is that *801 of manifest error, Durham v. McFarland, Gay and Clay, Inc., supra.
The evidence bearing on these factual findings as to lack of an undertaking and adequacy of notice is as follows. J. Everett Eaves, Jr. testified that he had handled the Zinsel account until the early 1990's and deemed the flood coverage of $200, 000/$200,000 adequate for the risks involved. He said that the L & A Road facility was in the most favorable of flood zones and that in two prior floods the losses were only $94,000 in 1983 and $33,000 in 1991.
Mark Rusck testified that the major reason to move its insurance to Rosenthal was the workers' compensation problem. He said that the flood policy was left with Eaves because it had a different expiration date. He said that there was never any discussion with Rosenthal about the adequacy of the flood coverage. He also said he never requested of anyone at Eaves that they supply the maximum available flood coverage. He did not dispute that the Omaha notice was sent to Zinsel, and speculated that either he or his secretary may well have thrown it in the trash as junk mail.
It was stipulated that Eaves had made a decision to rely on the Omaha notice rather than send out additional mailings about the increase in flood limits. Bob Therrell, the owner of Calhoun & Barnes Insurance Agency, an agency similar to Eaves, testified that his firm writes policies for Omaha, that it relied on the Omaha notice to its clients, and that in his opinion this did not fall below any standard of care owing to clients. Terry Walker, an agent for Aparicio, Walker & Seeling Insurance Agency, also similar to Eaves, gave similar testimony.
The trial judge also noted that Dr. Felton, plaintiff's insurance expert, agreed that relying on the Omaha notice was sufficient. Plaintiff contends here that this is an incorrect characterization of that testimony. While we agree that Dr. Felton did express his opinion that the letter was not sufficient, he also stated the opposite. On cross examination he was pressed on why he thought Eaves should have sent its own letter instead of relying on the Omaha letter.
Q. Why in your opinion is not the letter sent by Omaha in January of 1995, advising of the increased limits not sufficient to advise Zinsel of the changes?
A. Well, I guess there are a couple of reasons. One is it is apparently a form letter which is subject to being passed over when it comes into the business. Again, it goes back to if the agent has decided in his own mind that that letter is sufficient, that is fine. It is sufficient. But witness here, it was not sufficient. But it is the agent's decision to make.
. . . .
Q. But you testified that you don't believe that the Omaha letter is sufficient notification to Zinsel of the increased flood limits?
A. I personally don't think so. But, again, if the agent thinks so, that is fine.
Given these apparently contradictory statements by the expert, we cannot say that the trial judge was manifestly wrong in concluding that Dr. Felton thought the letter sufficient.
We also point out that manifest error exists only where no reasonable trier of fact could have made a particular finding on the record considered in its entirety. Here, the finding at issue is that Eaves did not breach its duty to Zinsel to keep it informed of available coverage when it relied on the letter from Omaha. The entire record shows that Omaha did its own direct billing to Zinsel, so Zinsel was aware of it as its insurer. Eaves did not simply neglect the issue of notifying its clients of this change, but held a meeting where it was decided that reliance on the Omaha notice was proper until policy renewal time. Representatives of two other agencies testified that they too had relied on the Omaha letter until renewal. Although the general tenor of Dr. Felton's *802 testimony was that such reliance was not sufficient, he made apparently conflicting statements on cross examination. Considering all of the testimony, it is our opinion that a reasonable trier of fact could well have found that Eaves did not breach its duty to Zinsel in relying on the Omaha letter. That being the case, we are precluded from setting aside that finding and must affirm the judgment.
For the foregoing reasons, the judgment of the trial court in favor of J. Everett Eaves, Inc. is hereby affirmed.
AFFIRMED.